NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0991n.06

No. 10-1617

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Sep 07, 2012*
DEBORAH S. HUNT, Clerk

EDWARD SHAIEB,                                    )
                                                 )        ON APPEAL FROM THE
        *Petitioner-Appellant,*                  )        UNITED STATES DISTRICT
                                                 )        COURT FOR THE WESTERN
        v.                                       )        DISTRICT OF MICHIGAN
                                                 )
MARY BURGHUIS, Warden,                           )        **O P I N I O N**
                                                 )
        *Respondent-Appellee.*                   )


BEFORE:  COLE and BOGGS, Circuit Judges; and OLIVER, Chief District Judge.[*]

   **SOLOMON OLIVER, JR., Chief District Judge.**  Petitioner-Appellant, Edward Shaieb,

appeals the denial of his Petition for Habeas Corpus pursuant to 28 U.S.C. § 2254, by the United

States District Court for the Western District of Michigan.  For the following reasons, we **AFFIRM**

the decision of the district court.

## I.  BACKGROUND AND PROCEDURAL HISTORY

### A.  Factual Background

   This case arises from allegations made by two young girls, Mariana and Nicole, concerning

incidents that occurred at Petitioner's home while they were on "sleep-overs" with Petitioner's

daughter, Lindsey.  Mariana testified that she was sexually assaulted by Petitioner on two occasions.

---

   [*]The Honorable Solomon Oliver, Jr., United States Chief District Judge for the Northern
District of Ohio, sitting by designation.

She stated that the first incident with Petitioner occurred on October 15, 1993. Petitioner walked into the bedroom where she and Petitioner's daughter, Lindsey, were sleeping, pulled down the bedspread and sheet covering Mariana, reached under Mariana's boxers and underwear, and placed his hand on her buttocks. Mariana testified that Petitioner "kind [of] just rubbed [her] butt a little bit" until she flinched, and Petitioner left the room. The second incident occurred in the spring of 1994. Petitioner entered the room where Mariana and Lindsey were sleeping and touched Mariana's chest under her T-shirt, placing his hands on her breasts and rubbing them; he then moved his hand down Mariana's underwear and boxers, putting his finger completely into her vagina. Petitioner ran out of the room when Mariana stirred.

Nicole testified that the two occasions on which she was assaulted by Petitioner occurred between October 1993 and February 1994. She indicated that on the first occasion she woke up when Petitioner entered the bedroom she was sharing with Lindsey. Petitioner walked over to her side of the bed and started caressing her buttocks underneath the sheet and bedspread with which she was covered. Nicole testified that when she pretended to wake up, Petitioner walked out of the room. She testified further that approximately one month later, she was assaulted in a similar manner by Petitioner. Both Mariana and Nicole indicated that Petitioner's daughter, Lindsey, did not wake up during any of the four incidents.

In addition to the victims, the prosecution called Detective Linda Deprez ("Detective Deprez"), a detective in the Sterling Heights Police Department assigned to the youth division, as well as several other witnesses, to testify. On March 9, 1998, she was assigned to the case against Petitioner. Thereafter, she conducted interviews with Mariana and Nicole. On March 23, 1998, Detective Deprez went to Petitioner's home. However, Petitioner was not home at that time, but his

wife, Mrs. Shaieb, and his daughter, Lindsey, were. Detective Deprez began to give Mrs. Shaieb an overview of the alleged sexual assaults committed by Petitioner against Mariana and Nicole. After about 10-15 minutes, Petitioner arrived. Detective Deprez advised Petitioner that allegations of inappropriate sexual behavior had been made against him. Petitioner denied the allegations. Before leaving, Detective Deprez asked Petitioner if he would come to the police station to make a statement so that the police could continue with their investigation. Petitioner seemed to indicate that he would by responding that he wanted to clear things up. However, Detective Deprez did not hear from Petitioner, Mrs. Shaieb, or Lindsey, after that meeting. Later, she learned through Petitioner's lawyer that he would not be in for an interview.

At trial, Petitioner called his wife, Mrs. Shaieb, to testify. She sought to refute the dates of the incidents alleged by Mariana and Nicole. Mrs. Shaieb provided receipts in an effort to demonstrate that she and Petitioner went out Christmas shopping and to dinner on the night of the first incident alleged by Mariana. Mrs. Shaieb asserted that Mariana could not have slept over with Lindsey that night since Mrs. Shaieb does not allow Lindsey to have sleep-overs if she is not home. In addition, because Mariana and Nicole had mentioned that Lindsey's room was in the process of being redecorated when they were attacked, Mrs. Shaieb provided receipts associated with the redecorating to show that it did not take place in 1994 during the time of the alleged attacks, but in March and April of 1995.

### B. Procedural History

Petitioner was charged with one count of first-degree criminal sexual conduct ("CSC") involving a victim under thirteen, Mich. Comp. Laws § 750.520b(1)(a), and one count of second-degree CSC involving a victim under thirteen, Mich. Comp. Laws § 750.520c(1)(a), for his alleged

sexual assault of Mariana. Petitioner was charged with two counts of second-degree CSC involving a victim under thirteen, Mich. Comp. Laws § 750.520c(1)(a), for his alleged sexual assault of Nicole. On December 8, 2000, a jury found Petitioner guilty of each of the counts. On January 18, 2001, Petitioner was sentenced to concurrent prison terms of nine to twenty years for the first-degree CSC conviction and five to fifteen years for each of the second-degree CSC convictions. On August 22, 2001, because of a recalculation of the guidelines, Petitioner was resentenced to concurrent prison terms of eight to twenty years for the first-degree CSC conviction and five to fifteen years for each of the second-degree CSC convictions. On September 9, 2003, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. On June 10, 2004, the Michigan Supreme Court denied Petitioner's application for leave to appeal. On November 15, 2004, the United States Supreme Court denied his petition for writ of certiorari.

On November 7, 2005, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Western District of Michigan. The case was referred to a magistrate judge. However, on March 7, 2006, the district court stayed the habeas corpus proceedings to allow Petitioner to present his unexhausted claims in the state courts. On April 23, 2007, Petitioner filed a motion to lift his stay, reopen the case, and amend his habeas petition. On May 4, 2007, the magistrate judge granted Petitioner's request to lift the stay and reopen the case, and granted in part and denied in part his request to amend his petition. On August 3, 2009, the magistrate judge issued a Report and Recommendation ("R&R"), recommending that the petition be denied. On March 31, 2010, the district court adopted the magistrate judge's R&R, and entered an order denying the petition in its entirety. However, the district court granted Petitioner a certificate of appealability. Petitioner filed a timely notice of appeal on April 22, 2010. On May 5, 2010, this court remanded

4

the case to the district court for the limited purpose of specifying which issues were certified for appeal. Of the eight grounds raised by Petitioner, the district court certified the following four issues for appeal:

(1)     Whether the prosecutor violated Petitioner's Fourteenth Amendment rights by improperly commenting on Petitioner's . . . post-arrest silence, including his decision not to testify at trial?

(2)     Whether Petitioner was denied the effective assistance of trial counsel because counsel failed to argue that [Mariana] was thirteen years old at the time of the alleged crime?

(3)     Whether Petitioner was denied the effective assistance of trial and appellate counsel because they failed to move for a new trial when the great weight of the evidence showed that [Mariana] was thirteen years old at the time of the alleged crime?

(4)     Whether Petitioner was denied the effective assistance of trial and appellate counsel because they failed to sufficiently argue a Fourteenth Amendment violation when the prosecutor used Petitioner's silence, after his arrest and receiving *Miranda* warnings, as evidence in trial?

## II.  STANDARD OF REVIEW

This court reviews the district court's decision denying a habeas petition *de novo*. *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), governs review of the state court's decision from which the habeas petition arises. The AEDPA states that:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, a federal court may grant a writ of habeas corpus in two instances: first, if a state court renders a decision that is contrary to federal law clearly established by the Supreme Court; or second, if the state decision utilizes the governing federal law but applies the law in an unreasonable manner. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). In the second instance, the state court's application of federal law must be "objectively unreasonable," not just incorrect. *Id*. at 409-411. The clause "contrary to" permits a federal court to grant a habeas corpus petition if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 412-13. The clause "unreasonable application" permits a federal court to grant a habeas corpus petition if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The "unreasonable application" analysis is an objective inquiry and thus prohibits a federal court from issuing a writ based on its independent conclusion that the state court's application was erroneous or incorrect. *Id*. The state court's application of federal law must be unreasonable. The clause "clearly established Federal law" alludes "to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.

Factual findings made by the state court "shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III.  LAW AND ANALYSIS

### A.  Prosecutorial Misconduct

#### 1.  Petitioner's Claim

Petitioner argues that his Fourteenth Amendment rights were violated because at trial, the prosecutor improperly commented on his post-arrest, post-*Miranda*[1] silence, including his decision not to testify at trial.  Petitioner alleges that the prosecutor engaged in this misconduct in several ways.  First, the prosecutor elicited testimony from Detective Deprez that Petitioner, his wife, Mrs. Shaieb, and his daughter, Lindsey, never contacted her for an interview.  Second, the prosecutor asked Lindsey and Mrs. Shaieb why they had not come into the station to talk with the detective.  Lastly, the prosecutor engaged in misconduct in her closing argument when she essentially argued that Petitioner's failure to meet with the police was substantive evidence of his guilt.  Petitioner also contends that the prosecutor improperly argued that Petitioner's wife and daughter could have shared their opinions regarding the accusations and the motivations of the victims, but did not do so in the two-and-a-half years in which the case was pending.

#### 2.  Prosecutor's Conduct

During the prosecution's case-in-chief, the prosecutor elicited the following testimony from Detective Deprez regarding her discussion with Petitioner at his house on March 23, 1998:

> Q:  Did you say anything else to him?
>
> A:  I asked him if he'd come to the police station to make any type of a statement and we could continue with our investigation, the investigation tools that we have.  And again, I left my business card and – with him and he said he wanted to stay [sic], he wanted to clear things up.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

Q: He said he wanted to clear things up to you?

A: Yes, he did.

Q: And that was March 23rd of 1998?

A: Yes.

Q: Did you hear from him after that?

A: No.

Q: Did you hear from [Mrs.] Shaieb after that?

A: No.

Q: Did you hear from Lindsey . . . after that?

A: No.

Q: Did you have an opportunity to speak to any of those people after that initial time that you were at the house?

A: No.

Q: Why is that?

A: They refused to come for an interview.

Petitioner's counsel did not object to these questions. On cross-examination, Petitioner's counsel elicited the following testimony from Detective Deprez:

Q: All right. Are you suggesting for the moment that the fact he didn't come into your police department and be interviewed is noncooperative?

A: To a certain extent, because when I was at the house, he said he would and then he changed his mind.

* * *

8

Q: As a matter of fact, the way you learned he changed his mind is because some lawyer by the name of Steve Rabaut personally contacted you and told you he won't [be] in for an interview, right?

A: Correct.

On cross-examination, the prosecutor elicited the following testimony from Mrs. Shaieb:

Q: Didn't Detective Deprez give you a card and have you – tell you to contact her?

A: Yes, she gave me a card and said feel free to call her at any time.

Q: Did you ever do that?

A: I wanted to.

Q: No.

A: I wanted to.

Q: No. Is the answer –

A: No, I didn't.

Q: Did you ever have Lindsey do that?

A: No. We were advised not to do that.

Q: Thank you ma'am. By your attorney?

A: Yes.

The prosecutor elicited the following testimony from Lindsey regarding her failure to contact the police department:

Q: [T]his case has been pending for almost two and a half years, right?

A: Correct.

9

Q: Did you [] think that you should call the Sterling Heights Police Department or the Macomb prosecutor's office to talk to them about this case?

A: No.

Q: Never?

A: Never.

In her closing argument, the prosecutor reiterated the failure of Petitioner, his wife, and his daughter to meet with Detective Deprez although Petitioner had initially indicated that he would do so. The prosecutor stated the following in her closing argument:

The detective also tells you that [Petitioner] came into the house while she was there, and she indicated to him, you know, "This is why I'm here. I'd like to sit down and I'd like to meet with you." And at that time he seemed like he wanted to sit and meet with her, and she gave the card to at least one of them, if not both of them, saying ["]this is my card with my number on it, please contact me," and that was back on March 23rd of 1998 and here we are today and that card has never been used, not by Lindsey . . ., not by [Mrs.] Shaieb, not by [Petitioner].

And if [Petitioner] has an attorney and wants to communicate through his attorney, and that's what happened within days, the attorney contacted the detective and said, "I represent [Petitioner]," at that point we are on notice that police officers, prosecutors, any contact that's to be made to [Petitioner] is through his attorney.

However, and, you know, argument will be made, "Well, no, I'm the attorney for [Petitioner], not for [Mrs.] Shaieb or Lindsey . . . ." So they certainly could have come forward and said, "[w]e want to give this --" we certainly appreciate them coming here yesterday at the eleventh hour and say [sic], "These girls have always had problems and they are easily led and that's why this has happened." That's very nice that they share that with us today. I wish they had shared that with the detective in the two and a half years that the case has been pending.

And certainly if [Petitioner] had an attorney representing him, he could have certainly had that attorney with him and come into the police station and met with the detective. That never happened.

10

Petitioner's trial counsel immediately objected to the prosecutor's statements on Fifth Amendment grounds. The jury was removed and the parties argued the objection. The trial court sustained the objection, lectured the prosecutor, and offered to provide the jury with an instruction at the end of the trial, regarding Petitioner's right to remain silent.

After closing arguments and outside the presence of the jury, Petitioner's trial counsel moved for a mistrial on the ground that the prosecutor had violated Petitioner's Fifth Amendment right to remain silent. The trial court denied Petitioner's motion, but provided the jury with the following curative instruction during the jury instructions:

> You are not to consider the fact that [Petitioner], [Petitioner's] wife or [Petitioner's] daughter failed to contact the police or prosecutor's office after Detective Deprez' initial investigation. [Petitioner] and his family have an absolute right not to do anything with regard to the People's investigation.

Petitioner's trial counsel did not object to this instruction.

About two weeks after the jury rendered its guilty verdict, Petitioner's trial counsel brought a second motion for a mistrial, asserting the same Fifth Amendment argument he previously raised. Petitioner's trial counsel argued there was no way to cure such a big error by the prosecution. His trial counsel asserted that "between the fifth amendment violation and the shift of the burden of proof, under no circumstances was there not a miscarriage of justice in this trial." The trial court denied Petitioner's motion, stating the following:

> I disagree with you because I can differentiate the two situations. We have one situation where they failed to respond, where a curative instruction was given that he had no responsibility to respond and even add the fact that neither did his daughter or his wife. Had she gone up during close [sic] arguments and made a comment to the effect that he sat there, he didn't do anything, he didn't get up to testify, he didn't say anything, he didn't tell us his side of the story, that I would find to be prosecutorial misconduct.

11

I gave a curative instruction. I feel that that curative instruction was sufficient enough to inform the jury that he did not have to do anything, and that he should not be held responsible. I am satisfied in my find [sic] that [the] curative instruction was significant enough to place in that jury's mind the fact that he didn't have to do any [sic]. Had she got up there and started badgering him about not testifying, that would be different and that's where I'm drawing the line. So your motion is denied.

### 3. Michigan Court of Appeals

In reviewing this issue, the Michigan Court of Appeals rejected Petitioner's claim for the following reasons:

> We also find that the reference to defendant's silence from the time of his arrest until trial did not violate defendant's Fifth Amendment right against self-incrimination. FN 4 Contrary to defendant's argument, *People v. Bobo*, 390 Mich. 355, 359 (1973), does not require a different result. Our Supreme Court has severely limited *Bobo*, stating that *Bobo* is "viable only to the extent that it precluded 'impeachment for and comment on silence at the time of arrest in the face of accusation." ' *Hackett, supra* at 215 n 6, quoting *People v. Collier*, 426 Mich. 23, 39 (1986); *People v. Cetlinski*, 435 Mich. 742, 759 (1990) ("[I]n light of both pre- and post-*Bobo* decisions of the United States Supreme Court, it is clear that the Fifth Amendment rationale no longer supports the *Bobo* rationale."). Additionally, the Court has said that *Bobo* is coextensive with federal precedent, and the Michigan constitution is consistent with federal Fifth Amendment and Fourteenth Amendment jurisprudence. *Schollaert, supra* at 162, citing *People v. Sutton* (After Remand), 436 Mich. 575, 579 (1990); *People v. McReavy*, 436 Mich. 197, 201 (1990); and *Cetlinski, supra* at 759.
>
>> FN 4. The record does not indicate when [Petitioner] was arrested or for what length of time he was in custody. We refer to the time of his arrest, however, in light of its importance to our analysis. *Hackett, supra*.
>
> *4 Although defendant's right to remain silent in the face of accusation arises under the Fifth Amendment, the prohibition on use of defendant's silence after arrest and receiving *Miranda* FN5 warnings FN6 arises out of the due process clause of the Fourteenth Amendment. FN7 *See McReavy, supra* at 218 & n 21, citing *Doyle v. Ohio*, 426 U.S. 610 (1976) (stating that "it would be fundamentally unfair and a violation of due process" to inform a defendant that he has a right to remain silent and then use his silence against him at trial); and *Wainwright v. Greenfield*, 474 U.S. 2[8]4 (1986) (stating that use of post-arrest, post-Miranda silence as substantive evidence of sanity violates due process). Defendant briefly mentions that the prosecutor's argument also violated *Doyle*, but does not request relief on this basis. Additionally, defendant did not raise an objection on due process grounds in the trial

court. An objection on one ground does not preserve an appeal on another ground. *City of Westland v. Okopski*, 208 Mich.App 66, 72-73 (1994). Defendant has not cited any viable authority that supports his contention that use of his post-arrest silence also violates the Fifth Amendment. A party may not leave it to this Court to search for authority to support its position. *People v. Harlan* (On Remand), ____ Mich.App ____ (Docket No. 237281, issued 8/14/03) slip op at 1-2, citing *People v. Watson*, 245 Mich.App 572, 587 (2001).

> FN 5. *Miranda v. Arizona,* 384 U.S. 436; 86 S Ct 1602; L. Ed. 2d 694 (1966).
>
> FN 6. Despite that the record does not address whether or when [Petitioner] received *Miranda* warnings, in the absence of any assertion from [Petitioner] to the contrary, we assume for purposes of this analysis that [Petitioner] properly received *Miranda* warnings upon his arrest.
>
> FN 7. Although the issue whether use of post-arrest post-*Miranda* silence also violates the Fifth Amendment right against self-incrimination was presented to the United States Supreme Court in *Doyle*, the Court did not address the issue. *Doyle, supra* at 616, 626 (Stevens, J., dissenting). The Court in *Wainwright*, in its analysis of substantive use of post-arrest silence, specifically noted that *Doyle* did not rest on a Fifth Amendment analysis, unlike *Griffin. Wainright, supra* at 291 n7. *See also Dennis, supra* at 573.

In any event, we would find that the trial court did not abuse its discretion by denying defendant's motion for a mistrial. The trial court properly concluded that its instruction to the jury cured any error by the prosecution. Unless there is an " 'overwhelming probability' that the jury will be unable to follow the court's instructions ... and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant ...," we presume that the jury complied with the trial court's curative instruction. *Dennis, supra* at 581, quoting *Greer v. Miller*, 483 U.S. 756, 767 n 8 (1987) (citations omitted). Because defendant's post-arrest silence was "at most 'insolubly ambiguous," ' *Greer, supra* at 767 n 8, quoting *Doyle, supra* at 617, the effect of defendant's post-arrest silence was not devastating. Accordingly, the trial court reasonably concluded that its instruction cured any error and that declaring a mistrial was not necessary. *Dennis, supra* at 582.

*People v. Shaieb*, Nos. 232957, 236729, 2003 WL 22092593, at *3-4 (Mich. Ct. App. Sept. 9, 2003).[2]

---

[2]Petitioner confirmed in his brief supporting his habeas petition in the district court that the Michigan Court of Appeals's assumption, that he received *Miranda* warnings, was correct.

13

## 4. District Court

In the R&R, the magistrate judge applied a *de novo* standard, finding there was no due process violation. The magistrate judge found the prosecutor's reference to Petitioner's post-arrest, post-*Miranda* invocation of his right to remain silent did not violate *Doyle v. Ohio*, 426 U.S. 610 (1976). The magistrate judge found that since Petitioner did not testify, he was unlike the petitioner in *Doyle*, a defendant who had provided an exculpatory story for the first time at trial. Therefore, the prosecutor's remarks were not an attempt to impeach Petitioner's trial testimony, as was the case in *Doyle*. The magistrate judge then found that the trial court followed the due process safeguards set forth by the Supreme Court in *Greer v. Miller*, 483 U.S. 756 (1987), since the trial court listened to the objection arising out of the prosecutor's closing arguments outside the presence of the jury, no further arguments were allowed regarding Petitioner's silence, and the trial court provided the jury with a curative instruction. In addition, the trial court instructed the jury during preliminary instructions and final instructions that closing arguments were not evidence and the jury must follow the law that the court gives it.

The magistrate judge found that even if a *Doyle* violation occurred, it was harmless. The magistrate judge found that the curative instruction remedied any possible prejudice and there was no reason to believe that the jury was unable to follow this instruction. Further, the magistrate judge concluded that the evidence against Petitioner was strong and the prosecutor's comments "did nothing to undermine the strength of that evidence." Therefore, the magistrate judge concluded, the misconduct did not result in prejudice to Petitioner or deprive him of due process and thus, he was not entitled to habeas relief.

14

In adopting the R&R, the district court found none of Petitioner's objections to be persuasive. Specifically, the district court disagreed with Petitioner's assertion that the curative instruction was generic. The district court found the instruction "was tailored to specific statements made by the prosecutor, and went beyond what was necessary to cure the prosecutor's reference to Petitioner's post-*Miranda* silence."

### 5. Analysis

### a. Level of Review

Respondent argues that Petitioner's claim is procedurally defaulted because the Michigan Court of Appeals ruled that this claim was waived due to Petitioner's failure to object at trial on due process grounds. Petitioner argues that his claim was not procedurally defaulted because his trial counsel objected at trial and requested a mistrial, but did so based on the Fifth Amendment and not the Fourteenth Amendment. Petitioner asserts that the Michigan Court of Appeals only denied him relief because his appellate counsel, who also raised this constitutional issue, also incorrectly based their argument on the Fifth Amendment and not the Fourteenth Amendment. Petitioner contends that his argument was not ignored by the Michigan Court of Appeals and that to the extent it was unsuccessful it was because his trial and appellate counsel should have known that a *Doyle* challenge is based on the Fourteenth Amendment's Due Process Clause. Therefore, Petitioner argues, if he is entitled to relief but denied relief due to the ineffective assistance provided by his counsel, this would excuse his procedural default.

In the R&R, the magistrate judge indicated that since the procedural default issue raised so many questions and was particularly complex, it was appropriate to address the merits of Petitioner's claim and deny it on that basis, rather than conducting an analysis of the procedural default issue.

15

*See Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999) (reviewing case on the merits rather than addressing procedural default issue since it raised more questions than the case on the merits); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (stating that the "Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). In addressing the merits, the magistrate judge applied a *de novo* standard of review. Respondent argues that, in the event the issue is reviewed on the merits, the court should utilize the deferential AEDPA standard because the Michigan Court of Appeals addressed the issue on the merits. The court finds this argument to be well-taken. The Michigan Court of Appeals noted that Petitioner did not request relief under *Doyle*, despite citing the case, and that he failed to object on due process grounds in the trial court. It found that Petitioner did not cite any viable authority to support his assertion that the use of his post-arrest silence violates his Fifth Amendment right against self-incrimination. Nevertheless, referencing *Doyle*, the Michigan Court of Appeals found the trial court did not abuse its discretion in denying Petitioner's motion for a mistrial since the effect of the prosecutor's improper comments was not devastating, and the trial court reasonably concluded that the curative instruction remedied any error. In reaching this conclusion, the Michigan Court of Appeals relied on *Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987). Thus, the Michigan Court of Appeals relied on the two applicable Supreme Court cases, *Doyle* and *Greer*, to address the issue raised by Petitioner, and there is no question that the court intended to do an analysis of the issue. While the magistrate judge and district court conducted a *de novo* analysis of Petitioner's claim without providing a basis for doing so,[3] this court finds the deferential analysis under AEDPA is

---

[3]This court stated in *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007), that

[d]eferential review under AEDPA applies only where the state court has adjudicated

16

warranted here. Despite the reference to Petitioner's failure to articulate the appropriate basis for

his claim, the Michigan Court of Appeals reviewed his claim on the merits.[4]

### b. Due Process Claim

This court has stated that "[t]he relevant question in cases of alleged prosecutorial

misconduct is 'whether the prosecutors' comments so infected the trial with unfairness as to make

the resulting conviction a denial of due process.'" *Mason v. Mitchell*, 320 F.3d 604, 634-35 (6th Cir.

2003) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). The Supreme Court has stated

that in order "[t]o constitute a due process violation, the prosecutorial misconduct must be of

sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*,

483 U.S. 756, 765 (1987) (internal citation and quotation marks omitted). For purposes of habeas

analysis, the role of the court is "to determine whether the conduct was so egregious so as to render

the entire trial fundamentally unfair." *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1355

(6th Cir. 1993) (internal citation and quotation marks omitted). This determination must "be made

by evaluating the totality of the circumstances surrounding each individual case." *Lundy v.*

---

a claim on the merits. When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply. In that case, [the] Court reviews questions of law and mixed questions of law and fact de novo.

(internal citations omitted).

[4]This court has recently stated that "[t]o warrant AEDPA deference, a state court's 'decision on the merits' does not have to give any explanation for its result, *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011), nor does it need to cite the relevant Supreme Court cases, as long as 'neither the reasoning nor the result of the state-court decision contradicts them,' *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam)." *Otte v. Houk*, 654 F.3d 594, 600 (6th Cir. 2011). Further, "[t]he law requires such deference to be given even in cases, such as this one, where the state court's reasoning is flawed or abbreviated." *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009).

*Campbell*, 888 F.2d 467, 474-75 (6th Cir. 1989) (internal citation and quotation marks omitted). Also critical to the court's determination is whether a curative instruction was given. *Serra*, 4 F.3d at 1356.

Petitioner's claim implicates the Supreme Court's holding in *Doyle*. In *Doyle*, the Supreme Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." 426 U.S. at 620. There, the defendants testified at their trials and indicated, for the first time, that they had been framed by an informant. *Id*. at 613. On cross-examination, the prosecutor repeatedly asked why they had not told this story to the police when they were arrested. *Id*. at 614. The Supreme Court stated that there is an implicit assurance that anyone who receives *Miranda* warnings will not be penalized for choosing to remain silent and that it "would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id*. at 618. The Supreme Court later ruled in *Greer* that a prosecutor's single reference during cross-examination to a defendant's post-*Miranda* silence, which was immediately objected to and remedied by two curative instructions, did not violate the defendant's due process rights. 483 U.S. at 766. The *Greer* court found there was no *Doyle* error because the prosecutor was stopped before he was able to improperly use the defendant's silence in his questioning of the defendant. *Id*. at 764-65.

Since Petitioner did not testify at trial, this case is unlike *Doyle*, where the prosecutor attempted to impeach the petitioner through his post-*Miranda* silence. Instead, it is closer to *Greer*, where no testimony was actually elicited regarding the defendant's silence; rather, only the prosecutor's statement regarding the post-*Miranda* silence was brought up at trial. Although there

18

was only one reference by the prosecutor in *Greer* to the defendant's post-*Miranda* silence, whereas there were several references in the instant case, the decision of the Michigan Court of Appeals that there was no due process violation was still a reasonable application of Supreme Court precedent. In *Greer*, the Court found no due process violation where the trial court sustained an immediate objection to a single question and gave two curative instructions to the jury. Similarly, here, there were sufficient steps taken by the court to ensure that Petitioner's due process rights were not violated. As indicated previously, the prosecutor questioned Lindsey and Mrs. Shaieb regarding their failure to provide information to Detective Deprez regarding Petitioner. The prosecutor also elicited testimony from Detective Deprez regarding these failures, as well as Petitioner's failure to contact her. In her closing arguments, the prosecutor reemphasized these failures. Immediately after the prosecutor made these comments, Petitioner's counsel objected. Thereafter, the trial court proceeded to hear arguments on the objection outside the presence of the jury. The objection was sustained, and the prosecutor did not make any further arguments regarding Petitioner or his family's silence. After closing arguments and a break lasting several hours, but before jury deliberations, the judge provided the jury with a curative instruction, telling it to disregard the prosecutor's reference to the decision of Petitioner, his wife, and his daughter not to contact Detective Deprez after her initial investigation. He further instructed them that "[Petitioner] and his family have an absolute right not to do anything with regard to the People's investigation." The trial court went above and beyond what was necessary by including in the curative instruction the fact that the jury should not consider the Petitioner's wife and daughter's decision not to speak with police. This instruction was sufficient to cure the prosecutor's improper references in the closing arguments and during testimony.

Furthermore, the judge gave the following instruction to the jury after it had been sworn in and before the prosecution began its case-in-chief:

> After the prosecutor has presented all of her evidence, [Petitioner's] attorney may also offer evidence, but does not have to. By law, [Petitioner] does not have to prove his innocence or produce any evidence. If the defense does call any witness, the prosecutor has the right to cross-examine them. The prosecutor may also call witnesses as to contradict the testimony of the defense witnesses.
>
> After all the evidence has been presented, the prosecutor and [Petitioner's] attorney will make their closing arguments. Like the opening statements, these are not evidence. They are only [] meant to help you understand the evidence and the way each side sees the case. You must base your verdict only on the evidence.

In addition, the trial court provided the jury with the following instruction when delivering the final jury instructions prior to deliberations:

> It is my duty to instruct you on the law. You must take the law as I give it to you. If a lawyer says something different about the law, follow what I say. At various times I have already given you instructions about the law. You must take all my instructions together as the law you are to follow. You should not pay attention to some instructions and ignore others. To sum up, it is your job to decide what the facts of the case are, to apply the law as I give it to you, and in that way to decide the case.

The *Greer* court has stated that courts are "normally [to] presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer*, 483 U.S. at 767 n.8. Petitioner has not pointed to anything that would demonstrate there was an "overwhelming probability" that the jury was unable to follow the trial court's instructions. Therefore, the references made by the prosecutor regarding Petitioner's post-arrest, post-*Miranda* silence were sufficiently remedied by the trial court's curative instruction along with the preliminary

20

and final instructions given to the jury, and thus, there was no denial of due process. Furthermore, any references regarding Petitioner's wife's and daughter's failures to contact Detective Deprez do not implicate Petitioner's Fourteenth Amendment rights.

Although the references during questioning and closing arguments by the prosecutor to Petitioner's post-arrest, post-*Miranda* silence were improper and could potentially require this court to reach a different result were the case on direct appeal, the court is required to apply the deferential AEDPA standard. Federal courts conducting habeas review can only grant relief if the state court's application of federal law was unreasonable. The state court's application of federal law must be "objectively unreasonable," not just incorrect. *Williams*, 529 U.S. at 409-11. The standard put forth by § 2254(d) requires that:

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 131 S. Ct. at 786-87. Petitioner has failed to meet this standard. Therefore, he is not entitled to habeas relief on this claim, and this court AFFIRMS the decisions of the state court and the district court.

## B. Ineffective Assistance of Counsel

The district court certified the following issues regarding ineffective assistance of counsel for appeal:

> (2) Whether Petitioner was denied the effective assistance of trial counsel because counsel failed to argue that [Mariana] was thirteen years old at the time of the alleged crime?

21

(3)     Whether Petitioner was denied the effective assistance of trial and appellate counsel because they failed to move for a new trial when the great weight of the evidence showed that [Mariana] was thirteen years old at the time of the alleged crime?

(4)     Whether Petitioner was denied the effective assistance of trial and appellate counsel because they failed to sufficiently argue a Fourteenth Amendment violation when the prosecutor used Petitioner's silence, after his arrest and receiving *Miranda* warnings, as evidence in trial?

To prevail on an ineffective assistance of counsel claim, a petitioner must show: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order for counsel's performance to be deficient, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Claims of ineffective assistance of appellate counsel are also reviewed pursuant to this standard. *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009).

This court has stated that "[w]hen deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004). In addition, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which [the Supreme Court] expect[s] will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

### 1. Mariana's Age

Because two of Petitioner's ineffective assistance of counsel claims are in regard to Mariana's age, the court will examine the claims together. In his first claim, Petitioner argues that Mariana was at least thirteen at the time the first-degree CSC crime occurred and that his trial counsel should have argued that she was over thirteen at the time of the incident and/or that she was

22

uncertain of when the offense occurred. Petitioner asserts, in his second ineffective assistance of counsel claim, that his trial counsel committed error by failing to move for a new trial based on the weight of the evidence. Petitioner argues that his appellate counsel committed error because they failed to timely move for a new trial on the age issue and therefore the issue was not preserved for appellate review. Petitioner maintains that had the new trial motion been timely filed, the issue would have been presented to the trial court where relief could be granted, or in the alternative, the issue would have been preserved for appellate review.

Petitioner was convicted of one count of first-degree CSC involving a victim younger than thirteen years of age (Mariana), in violation of Mich. Comp. Laws § 750.520b(1)(a).[5] The elements of a first-degree CSC offense are: (1) that the defendant engaged in sexual penetration of another person; and (2) the other person was under thirteen years of age. *Id.*; *People v. Hammons*, 534 N.W.2d 183, 184 (Mich. Ct. App. 1995). Sexual penetration is defined as "any . . . intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." Mich. Comp. Laws § 750.520a(r).

Of the two arguments raised by Petitioner, the only argument raised on direct appeal was that his trial and appellate counsel were ineffective for failing to move for a new trial based on the fact that Mariana was thirteen at the time of the offense.[6] The Michigan Court of Appeals concluded that

---

[5]Petitioner is not raising any arguments regarding his second-degree CSC convictions as to Mariana.

[6]On direct appeal, Petitioner did not raise his claim regarding the failure of his trial counsel to move for an acquittal. The magistrate judge noted that Petitioner raised this argument for the first time in his motion for relief from judgment. The trial court found this argument was procedurally defaulted. Nevertheless, because the procedural default issue was more difficult than deciding the claim on the merits, the magistrate judge considered the merits of Petitioner's claim.

23

neither trial nor appellate counsel were ineffective for their failure to move for a new trial on this basis, stating the following:

> In a related argument, defendant asserts that his trial attorney was ineffective for failing to move for a new trial on the basis that the great weight of the evidence did not support his conviction. Defendant also argues that his appellate attorneys were similarly ineffective for failing to raise the issue in an appropriate motion.
>
> To prove ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that the defendant was so prejudiced that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *People v. Pickens*, 446 Mich. 298 (1994); *People v. Tommolino*, 187 Mich. App 14, 17 (1991). Because defendant did not move for a *Ginther* hearing, our review of this issue is limited to mistakes apparent on the record. *People v. Rodriguez*, 251 Mich.App 10, 38 (2002).
>
> The record does not indicate why defendant's attorneys failed to contest the weight of the evidence in an appropriate motion. Furthermore, as we have already determined, the jury was in a better position to judge the credibility of the trial witnesses. The trial judge may not sit as a "thirteenth juror" to veto the jury's verdict. *Lemmon*, *supra* at 636. Considering the trial court's limited role in reviewing the jury's determination of credibility, we cannot say that a motion for new trial on this ground would have been successful. Therefore, defendant has not established that he was prejudiced by his attorneys' failures to raise this issue.

*Shaieb*, 2003 WL 22092593 at *5 (footnote omitted).

Mariana was born on February 6, 1982 and therefore, she turned thirteen on February 6, 1995. At trial, she testified about the two incidents of sexual abuse by Petitioner. The first incident occurred in the early morning of October 15, 1993, when she was eleven. The second incident she believed occurred in the spring of 1994, when she was twelve. Petitioner's sufficiency of the evidence claim is in regard to this second incident. Mariana testified that she recalled this incident occurring when Lindsey's room was being redecorated because there was a sheet over the window at the time. It is this time frame that forms the basis of Petitioner's sufficiency of the evidence claim.

24

Mariana testified that she was twelve at the time of this incident, but Petitioner argues she was thirteen at the time, referencing the testimony of his wife and daughter that the redecorating of Lindsey's bedroom occurred between March and May of 1995. In March of 1995, Mariana would have been thirteen. Mrs. Shaieb produced several receipts from 1995 in an effort to corroborate the redecoration expenses.

The magistrate judge found the Michigan Court of Appeals's conclusion was a reasonable application of the prejudice prong of *Strickland*. The magistrate judge ultimately held that the Michigan Court of Appeals's conclusion that Petitioner was unable to demonstrate the necessary prejudice was not an unreasonable application of clearly established Federal law. In its order adopting the magistrate judge's R&R, the district court stated that it agreed that Petitioner was unable to demonstrate the necessary prejudice and also failed to raise or preserve his claim.

Petitioner's first ineffective assistance of counsel claim, that his trial counsel committed error by failing to argue that Mariana was at least thirteen at the time of the offense and that she did not know when the offense occurred, must be reviewed *de novo* because it was not addressed by the Michigan Court of Appeals. *See Durr*, 487 F.3d at 431. Although the magistrate judge addressed this claim and the second claim together, this was improper because the first claim was not addressed by the Michigan Court of Appeals. Rather than address whether the first claim was procedurally defaulted, we address the merits of the claim and find that it should be denied because it fails under the first prong of *Strickland*. *See Hudson v. Jones*, 351 F.3d at 215 (stating that the "Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). This court does not find that the performance of Petitioner's trial counsel fell below an objective standard of reasonableness. It is clear that his trial counsel

25

strongly argued that Petitioner did not commit the crimes and that the alleged crimes could not have occurred on the dates asserted by Mariana. He presented the testimony of Petitioner's wife and daughter that the home was not being redecorated on the date on which Mariana maintained she was attacked, which was corroborated by receipts provided by Petitioner's wife. Petitioner's trial counsel stated the following in his closing: "[t]he reasonable doubt in this case is beyond any thought process, it is complete doubt, from the credibility of the stories to the dates[,] which are refuted by the documentation[s] . . . . The case lacks credibility." In addition, the trial court gave a clear instruction to the jury that to find Petitioner guilty of first-degree CSC, the jury needed to find that the victim was under thirteen. In the face of a clear instruction by the court and a substantial defense at trial regarding Petitioner's guilt, this court cannot say it was impermissible trial strategy for Petitioner's trial counsel to choose to forgo making an argument regarding the age of Mariana. *See Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001) ("The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.") Petitioner's trial counsel may have concluded that he did not want to pursue an "If Petitioner did it strategy" since it could send the wrong message to the jury regarding the possible guilt of Petitioner. Thus, under the circumstances, the failure to make an explicit argument concerning Mariana's age does not demonstrate that trial counsel's representation fell below an objective standard of reasonableness. In any event, Petitioner was not prejudiced because evidence was clearly presented regarding the time frames and because the court clearly instructed the jury that the victim needed to be under thirteen in order to find Petitioner guilty of first-degree CSC as to Mariana. Consequently, Petitioner is not entitled to relief on this basis.

This court holds Petitioner's second ineffective assistance of counsel claim, that his trial and appellate counsel committed error by failing to move for a new trial based on the weight of the evidence, also to be without merit. Faced with the testimony of the two victims and the additional evidence presented by the prosecution on one hand, and the testimony by Petitioner's wife and daughter and the additional evidence presented by Petitioner on the other, the jury was clearly faced with making a decision based on the credibility of the witnesses. Given the difficulty of establishing that a new trial is justified based on the fact that the verdict is against the great weight of the evidence, this court finds that Petitioner has not shown that the state court's determination, that he failed to demonstrate the necessary prejudice, constitutes an unreasonable application of *Strickland*. Thus, the decision of the state court was not an unreasonable application of clearly established Federal law. Accordingly, Petitioner is not entitled to relief on this claim, and this court AFFIRMS the decisions of the state court and the district court.

## 2. Petitioner's Silence

Petitioner argues that his trial and appellate counsel were ineffective for failing to sufficiently argue a Fourteenth Amendment violation when the prosecutor used his post-arrest, post-*Miranda* silence as evidence in his trial. Petitioner raised this argument in his motion for relief from judgment in the trial court. The trial court stated the following in denying his motion:

> [Petitioner] presently raises the following arguments: . . . (3) he was denied effective assistance of appellate counsel inasmuch as appellate counsel failed to seek a remand to expand the record regarding the ineffective assistance of trial counsel arguments; (4) he was denied effective assistance of trial and appellate counsel because they failed to sufficiently argue a Fourteenth Amendment violation when the prosecutor used his silence after his arrest and receipt of *Miranda* warnings as reasons to find him guilty; and (5) he was denied effective assistance of trial and appellate counsel on the ground that they failed to argue that his Fifth Amendment right against

27

self-incrimination was violated when the prosecutor referred to his silence during closing argument.

* * *

Ineffective Assistance of Trial Counsel

* * *

In any event, the Court notes that the fourth and fifth arguments arise from counsel's alleged failure to object to the prosecutor's reference to [Petitioner's] silence. The Court has already found above that such reference was addressed by the Court of Appeals. Since the appellate court held that the reference was cured by a jury instruction, trial counsel's failure to raise any objections thereto would not have had any impact on the outcome. The Court is satisfied that [Petitioner] has failed to establish ineffective assistance of counsel, as set forth under *Tommolino, supra*, and *Strickland, supra*.

Ineffective Assistance of Appellate Counsel

Finally, [Petitioner's] third, fourth, and fifth arguments address, in whole or in part, ineffective assistance of appellate counsel. In his third argument, [Petitioner] maintains that appellate counsel failed to seek a remand for the purpose of developing the record as to his position that he was denied []effective assistance of trial counsel. He submits that a remand would have afforded him an opportunity to establish that trial counsel's conduct had not constituted sound trial strategy. However, the Court is convinced that [Petitioner] has failed to show that counsel's conduct prejudiced him, especially in light of the appellate ruling that this Court had not abused its discretion in denying his motion for a mistrial.

Further, the fourth and fifth arguments go to the prosecutor's comments about [Petitioner's] silence. Inasmuch as this issue has been adequately discussed above, the Court need not address it again. It is sufficient to hold that such ground does not provide a basis for relief.

The magistrate judge found that the trial court's conclusions were not an unreasonable application of *Strickland*. The magistrate judge found Petitioner was not prejudiced by his counsel's failure to argue Fourteenth Amendment violations for references to his post-arrest, post-*Miranda* silence, since the trial court's curative instruction was adequate to remedy any potential prejudice.

28

The magistrate judge found this was especially true given that the evidence against Petitioner was strong.

This court finds this ground for relief to be without merit. As discussed above, the curative instruction given to the jury regarding Petitioner, Lindsey, and Mrs. Shaieb's silence, adequately cured the improper references made by the prosecutor to their silence. In addition, the instruction given by the trial court prior to the prosecutor beginning its case-in-chief, along with the later instructions given to the jury regarding the requirement that they adhere to all the instructions on the law that the judge had provided, further remedied the improper statements put forth by the prosecutor. Although the evidence is not as strong as the magistrate judge indicated, as the case was based on witness testimony and did not involve independent eyewitness testimony or forensic evidence that the Michigan Court of Appeals was responsible in holding that any improprieties by the prosecutor were sufficiently addressed and remedied by the trial court. Therefore, Petitioner is unable to demonstrate that he was prejudiced by the failure of his trial and appellate counsel to sufficiently argue a Fourteenth Amendment violation based on the improper comments made on his post-*Miranda* silence and thus cannot meet the *Strickland* standard. Consequently, this court finds the trial court's decision was not an unreasonable application of clearly established Federal law. In other words, Petitioner has again failed to demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87. Thus, Petitioner is not entitled to relief on this claim, and this court AFFIRMS the decisions of the state court and the district court.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court denying Petitioner's habeas petition.