Taylor, J.
Defendant was convicted by a jury of (1) possession with intent to deliver more than 50, but less than 225, grams of cocaine, MCL 333.7401(2)(a)(iii); (2) possession of marijuana, MCL 333.7403(2) (d); (3) carrying a concealed weapon in a vehicle, MCL 750.227; (4) malicious destruction of police property, MCL 750.377b; (5) possession of a firearm during the commission of a felony, MCL 750.227b; and (6) felon in possession of a firearm, MCL 750.224f. The Court of Appeals reversed defendant’s convictions because of testimony from a police detective that referenced defendant’s refusal to submit to police questioning. While the testimony was inappropriate, we conclude that it did not amount to a violation of defendant’s constitutional right to due process and that the trial court did not abuse its discretion by denying defendant’s motion for a mistrial. Accordingly, we reverse the judgment of the Court of Appeals and reinstate defendant’s convictions.
i
On the afternoon of August 23, 1997, defendant was a passenger in a van that was stopped by the police. A police officer observed that defendant was sitting with an object that turned out to be a safe between his legs. Eventually, the police called for a drug sniffing dog to be brought to the scene. At that point, defendant became “extremely enraged” and was placed in the back of a police car. After being placed in the police car, defendant kicked out its rear window, completely shattering the window. Eventu *570 ally, the dog was brought inside the van, and it alerted to the safe. Later, the police opened the safe and found several packets of cocaine, a small amount of marijuana, a loaded “Tech Nine” handgun, and over $2,000 in cash.[1] This led to the present charges and convictions against defendant.
At issue now is the following testimony from defendant’s trial that transpired during the direct examination of police detective Kent Cooper by the prosecutor after eliciting testimony that defendant had been arrested:
Q. What type of investigation follow-up did you do with regard to this?
A. I went out and attempted to interview [defendant], and at that time it was refused. He wished to speak to an attorney prior to me asking him any questions.
We note that the trial record does not include any express mention that defendant had been advised of his Miranda[2] rights to remain silent and to have an attorney present during custodial interrogation. However, the prosecution has effectively stipulated that defendant was in police custody following his arrest at the time of the attempted questioning and had been advised of his Miranda rights before rejecting Detec *571 tive Cooper’s attempt to interview him.[3] Accordingly, our decision presumes that defendant’s refusal to submit to police questioning constituted “post-Miranda*’ silence.
Defense counsel requested a mistrial on the basis of Detective Cooper’s testimony about defendant refusing to be questioned before speaking with an attorney. The trial court denied this request, stating that it was convinced the prosecutor did not intend to elicit testimony on this point and that it did not think “the jury picked it up or caught it in any way.”
In its final instructions to the jury, the trial court provided the following curative instruction with regard to Detective Cooper’s testimony referencing defendant’s refusal to submit to a police interview:
Also, at one time Detective Cooper made mention of the fact that when we [sic] went out to the jail to talk to [defendant], [defendant] did not want to talk to him and [defendant] said that he wanted a lawyer.
This is an absolute right that every citizen of this country has. In fact, if Officer Cooper had talked to [defendant], he would have had to tell [defendant] before he even started talking that [defendant] had a right to refuse to talk, and [defendant] had a right to have a lawyer present when he was talking to the officer.
So the fact that [defendant] said he wanted a lawyer and didn’t want to talk to the officer cannot be used by you in any way and is not any indication of anything. It’s a constitutional right that every citizen of this country has.
*572 n
Defendant argued before the Court of Appeals that the trial court improperly denied his motion for a mistrial. The Court of Appeals agreed with that conclusion. It treated the improper testimony from Detective Cooper as constituting a preserved claim of constitutional error that requires reversal unless it was harmless beyond a reasonable doubt. The Court stated that it could not conclude the error was harmless beyond a reasonable doubt and, accordingly, held that the trial court abused its discretion by denying defendant’s motion for a mistrial. Unpublished opinion per curiam, issued April 14, 2000 (Docket No. 215244).
In its appeal to this Court, the prosecution argues that there was no constitutional violation because the prosecution did not attempt to use defendant’s post-Miranda silence against him and that the trial court did not abuse its discretion by denying defendant’s motion for a mistrial. As we will explain below, we agree.
HI
We review a trial court’s decision to deny a motion for a mistrial for an abuse of discretion. See, e.g., People v Grove, 455 Mich 439, 475-476; 566 NW2d 547 (1997).
In Miranda v Arizona, 384 US 436; 865 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court articulated the rule that the police must advise a suspect before custodial interrogation that the suspect has the right to remain silent, that anything the suspect says may be used against him, and that the *573 suspect has a right to the presence of retained or, if indigent, appointed counsel during questioning.[4] To be clear, the present case does not involve any allegation of a violation of Miranda itself because there is no claim that defendant was interrogated by the police without being afforded the warnings required by Miranda. Neither does this case involve any other type of claim under the Self-Incrimination Clause of the Fifth Amendment, inasmuch as there is no claim that any involuntary statement by defendant was used against him.
Rather, properly understood, the present case involves a question regarding whether the testimony at issue from Detective Cooper violates defendant’s constitutional right to due process under the Fourteenth Amendment. In Doyle v Ohio, 426 US 610, 619; 96 S Ct 2240; 49 L Ed 2d 91 (1976), the United States Supreme Court held that the use of a criminal defendant’s silence “at the time of arrest and after receiving Miranda warnings” for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.
The Doyle Court explained that silence in the face of Miranda warnings cannot be used as evidence[5] to cast doubt on the defendant’s credibility for two basic reasons. First, silence in the face of Miranda wam- *574 ings may reflect nothing more than an exercise of Miranda rights (as opposed to being any implicit acknowledgment of guilt):
Silence in the wake of these warnings may be nothing more than the arrestee’s exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. [Doyle, supra at 617.]
Second, the Miranda warnings carry an implicit assurance that silence in reliance on those warnings will not be penalized:
Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial. [Doyle, supra at 618.]
Accordingly, the Doyle Court quoted with approval the statement in Justice White’s concurrence in United States v Hale, 422 US 171, 183-184; 95 S Ct 2133; 45 L Ed 2d 99 (1975), that “it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to [the defendant’s] silence at the time of arrest . . after the defendant has received Miranda warnings. Doyle, supra at 620. The Doyle Court reversed the convictions of the defendants on the basis of the prosecution’s conduct in using their post-Miranda silence against them.
The circumstances of the present case differ greatly from those of Doyle. In Doyle, the prosecution unabashedly used the silence of each of the two *575 defendants in the face of Miranda warnings against them at their respective trials. The prosecution repeatedly asked each defendant questions to emphasize that he did not provide an exculpatory version of events to the police after being arrested. In contrast, the present case involves a single question and answer in which Detective Cooper revealed in response to an open-ended question that defendant had refused to be interviewed by the detective before speaking with an attorney.
We recognize that Detective Cooper’s answer may not reasonably be viewed as nonresponsive to the prosecutor’s open-ended question asking about the “type of investigation follow-up” pursued by the detective. Detective Cooper’s reply about his attempt to interview defendant described something that he did in attempting to investigate the case after defendant was arrested. On the other hand, there is nothing to reasonably support a conclusion that the prosecutor intended for this question to elicit a reference to the attempted interview. Immediately after the detective’s answer referencing defendant’s refusal of the police interview, the detective began testifying about his other investigative efforts. In our view, it is evident that the prosecutor’s question, while it may have been inartfully phrased, was aimed at eliciting testimony about these investigative efforts, not about the defendant’s refusal of a police interview.[6]
*576 In considering the implication of the substantial difference between this case and Doyle, we are guided by the intervening decision of the United States Supreme Court in Greer v Miller, 483 US 756; 107 S Ct 3102; 97 L Ed 2d 618 (1987). In Greer, the defendant[7] testified at his trial, claiming that he was innocent of the murder and related crimes charged and providing an exculpatory version of events that implicated two others as the perpetrators. Id. at 758. During the prosecutor’s cross-examination of the defendant, he asked, “why didn’t you tell this story to anybody when you got arrested?” Id. at 759. Defense counsel immediately objected, and the trial court sustained the objection and instructed the jury to ignore the question. Importantly, the prosecution did not pursue the inquiry further or mention it during closing argument. In its jury instructions, the trial court told the jury to disregard questions about which objections were sustained. Id.
The United States Supreme Court in Greer held that, despite the prosecutor asking an improper question, no actual violation of Doyle occurred. Greer, supra at 764-765. The Court explained:
[T]he trial court in this case did not permit the inquiry that Doyle forbids. Instead, the court explicitly sustained an
*577 objection to the only question that touched upon Miller’s postarrest silence. No further questioning or argument with respect to Miller’s silence occurred, and the court specifically advised the jury that it should disregard any questions to which an objection was sustained. Unlike the prosecutor in Doyle, the prosecutor in this case was not “allowed to undertake impeachment on,” or “permit[ted] ... to call attention to,” Miller’s silence. The fact of Miller’s postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no Doyle violation occurred in this case. [Id., citation omitted.]
Thus, the Court held that the prosecutor’s improper question did not require reversal of the defendant’s convictions. Id. at 761. Notably, the Greer Court emphasized that “[i]t is significant that in each of the cases in which this Court has applied Doyle, the trial court has permitted specific inquiry or argument respecting the defendant’s post-Miranda silence.” Id. at 764.
We conclude that the circumstances of this case are analogous to Greer and that no Doyle violation actually occurred. Indeed, the conduct of the prosecutor in Greer was far worse in that he attempted to directly inject the defendant’s silence into the defendant’s trial while the prosecutor in the present case inadvertently elicited testimony about the present defendant’s refusal to submit to a police interview. As in Greer, apart from the single impropriety, the prosecution did not call attention to defendant’s silence. While the dissent essentially hypothesizes that the jury may have drawn some type of negative inference from the willingness of other witnesses to speak to Detective Cooper, the prosecution never made such an argument to the jmy. In our view, it would be *578 strained to believe that the prosecution intended to draw — or that the jury actually drew — such an implicit “comparison” from Detective Cooper’s testimony which was overwhelmingly focused on presenting expert testimony about the drug trade. There was no further questioning or argument regarding defendant’s silence. Thus, the trial court did not allow (or have occasion to allow) any specific inquiry or argument about defendant’s post-Miranda silence. Further, because defendant in the present case did not testify, there was obviously no attempt to.use his prior silence for impeachment purposes.[8] Moreover, the trial court gave a forceful curative instruction to the jury that defendant saying he wanted a lawyer and did not wish to talk with the officer “cannot be used by you in any way and is not an indication of anything.” Thus, as in Greer, “[t]he fact of [the defendant’s] postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference . . . .” Id. at 764.
Critical to our conclusion is that Doyle prohibits “the use for impeachment purposes of [a defendant’s] silence, at the time of arrest and after receiving Miranda warnings . . . .” Doyle, supra at 619. Because defendant did not testify, the testimony at issue by Detective Cooper could not possibly have been used against defendant for impeachment purposes. Thus, this is not a case like Doyle in which the prosecution essentially attempted to use a defendant’s *579 post-Miranda silence to further an argument that the defendant presented a fabricated version of events on the basis of hearing the evidence presented by the prosecution at trial. This reinforces that the prosecution did not use defendant’s post-Miranda silence against him in this case.
We note that our conclusion that no Doyle violation occurred in this case is supported by the decision of the United States Court of Appeals for the Eleventh Circuit in United States v Stubbs, 944 F2d 828 (CA 11, 1991). That case similarly involved improper testimony by a witness in response to an open-ended question. The prosecutor asked a prosecution witness what happened after she talked to a federal agent. In her answer, the witness said that the agent told her that the defendant would not “say anything.” Id. at 834. As in the present case, the prosecution in Stubbs did not attempt to draw out further information about the defendant’s cooperation with the police and never mentioned the issue during closing argument. However, the defendant argued on appeal that the testimony improperly commented on her postarrest refusal to talk with the police in violation of Doyle. The Eleventh Circuit concluded that no Doyle violation occurred:
While a single comment alone may sometimes constitute a Doyle violation,[9] the Supreme Court’s opinion in Greer makes clear that a single mention does not automatically suffice to violate defendant’s rights when the government does not specifically and expressly attempt to use — as was *580 attempted in Doyle and in Greer—the improper comment to impeach the defendant See Lindgren v Lane, 925 F2d 198, 201 (CA 7, 1991) (“As explained in Greer v Miller, it is the use of an accused’s silence against him at trial by way of specific inquiry or impeachment that forms the basis for a violation of the Fourteenth Amendment.”) (emphasis added). As was the case in Greer, the prosecutor here “was not allowed to undertake impeachment on, or permitted to call attention to [defendant’s] silence.” Greer, 483 US at 764 (citation omitted). The prosecution made no “specific inquiry or argument” about defendant’s postarrest silence. Id. Accordingly, we conclude there was no Doyle violation in this case. [Stubbs, supra at 835 (emphasis in original).]
As in Stubbs, the present case involved no specific inquiry by the prosecution regarding defendant’s silence or any attempt to use that silence for impeachment purposes. Accordingly, Stubbs reinforces our conclusion that there was no violation of defendant’s constitutional right to due process under Doyle in the present case.[10]
We acknowledge that, as argued by defendant, this case differs from Greer in that a witness actually testified in the presence of the jury that defendant re *581 fused to submit to police questioning. Essentially, defendant contends that this circumstance makes this case worse than Greer and involves an actual Doyle violation because evidence of the defendant’s silence was actually placed before the jury as opposed to a question that merely insinuated such silence. However, we do not accept this argument. The prosecutor in the present case made no effort to use the testimony about defendant’s silence against him. In contrast, the prosecutor in Greer insinuated that the defendant’s testimony in that case was questionable because he did not provide his story to the police at an earlier point. If the prosecutor’s conduct in Greer did not constitute “use” of the defendant’s silence against him, then neither did the inadvertently elicited testimony in this case.[11]
In light of our conclusion that there was no violation of defendant’s due process rights under Doyle, we hold that the trial court did not abuse its discretion in denying defendant’s motion for a mistrial. As the Greer Court stated, “we normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an ‘overwhelming probability’ that the jury will be unable to follow the court’s instructions, and a strong likelihood that the effect of. the evidence would be ‘devastating’ to the defendant.” Id. at 767, n 8 (citations omitted). The trial court in the present *582 case emphatically instructed the jury to place no weight on defendant’s invocation of his Miranda rights. Thus, it was reasonable for the trial court to conclude that any possible prejudice from the improper testimony from Detective Cooper could be cured with a cautionary instruction and that a mistrial was not required.[12]
For the foregoing reasons, we disagree with the Court of Appeals decision to reverse defendant’s convictions.[13]
Our judgment that the circumstances of the present case do not warrant reversal of defendant’s convictions should in no way be taken as condoning the inappropriate injection of a defendant’s exercise of the Miranda rights into a trial by either prosecutors *583 or the police. In the present case, considering (1) the limited nature of the improper testimony, (2) the lack of any effort by the prosecution to improperly use defendant’s invocation of the Miranda rights against him, (3) the strong curative instruction used by the trial court, and (4) that defendant did not testify so there is no concern of his post-Miranda silence having been used for impeachment purposes, we conclude that there was no constitutional violation and that the trial court did not abuse its discretion by declining to order a mistrial.
IV
In sum, we conclude that the inadvertent elicitation of testimony that defendant exercised his Miranda right to decline police questioning without the presence of counsel did not constitute a violation of defendant’s constitutional right to due process under Doyle. The circumstances of this case did not involve use by the prosecution of defendant’s post-Miranda silence against him within the meaning of Doyle and Greer. Thus, we reverse the judgment of the Court of Appeals and reinstate defendant’s convictions.
Corrigan, C.J., and Weaver, Young, and Markman, JJ., concurred with Taylor, J.

 Notably, defendant had also been a passenger in another vehicle that was stopped earlier that day. Defendant consented to a search of his person during that earlier stop. The police found over $1,000 in cash in one of his pockets, mostly in $20 bills, and several “comer baggies,” which are plastic baggies with the bottoms tom off and that are tied off with a knot. A police officer indicated that “comer baggies” are frequently used by drug dealers. However, no drugs were found on defendant’s person at that time and he was released.

 Miranda v Arizona, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

 In its brief to this Court, the prosecution states that it is not “arguing that the defendant’s comment was pre-Miranda or that the defendant’s invocation of his right to counsel should have been admissible.”

 In Dickerson v United States, 530 US 428; 120 S Ct 2326, 2336; 147 L Ed 2d 405 (2000), the Court quite recently held that Miranda announced a binding “constitutional rule” under the Fifth Amendment in requiring these warnings.

 The only exception is a situation in which a defendant testifies to having earlier provided an exculpatory version of events to the police and the prosecution offers evidence of defendant’s silence to rebut such a claim. Doyle, supra at 619, n 11. The Court, however, declined to allow the fact of silence to be raised by the officers in testimony even when the defendant offers an exculpatory version of events at trial.

 Nevertheless, this case provides an excellent opportunity to underscore the prosecutor’s continuing duty to carefully question witnesses so as to avoid improper, unforeseen testimony that may result from open-ended questions.
We respectfully disagree with the dissent’s characterization of this case as involving “a series” of questions and answers focused on defendant’s silence. Post, pp 583, 590. As may be seen from the quotation of the testi *576 mony set forth in the dissent, post at 587, the prosecutor only asked Detective Cooper one question that specifically regarded whether other people spoke with him. The prosecutor never commented on or stated that any inference should be drawn from the apparent willingness of certain witnesses to speak with Detective Cooper as opposed to defendant’s refusal to be interviewed prior to speaking to an attorney.

 Greer was actually a federal habeas corpus action. However, the important points of Greer involve the trial in which the petitioner was a criminal defendant. To avoid confusion, we will refer to the petitioner in Greer as the “defendant” in that case.

 Of course, we recognize that a defendant’s post-Miranda silence could be improperly used against him in violation of Doyle even in cases where the defendant did not testily. We merely note that the fact that the testimony at issue was obviously not used for impeachment purposes is one factor suggesting that there was no “use” of defendant’s post-Miranda silence against him in the present case.

 Accordingly, contrary to the dissent’s indication, we do not suggest that a single comment may never constitute a Doyle violation. Post at 588, n 4. We merely conclude that the single isolated incident at issue in the present case did not constitute a Doyle violation.

 Our decision is also consistent with the holding of the Indiana Supreme Court in Cook, v State, 544 NE2d 1359, 1363 (Ind, 1989), that testimony by a federal agent that there was no further contact with the defendant at a certain point because he “had made a request to speak to an attorney” did not constitute a Doyle violation. Similar to the present case, the remark was an “isolated statement,” and there was no specific inquiry or argument from the prosecution regarding the defendant’s post-Miranda silence. Cook, supra. See also Pulley v Commonwealth, 31 Va App 600, 605; 525 SE2d 51 (2000) (holding that there was no Doyle violation from a police officer’s nonresponsive comment that the defendant invoked his right to counsel where the prosecution did not exploit the issue); State v Baccam, 476 NW2d 884, 886-887 (Iowa App, 1991) (finding no abuse of discretion in the trial court’s denial of a mistrial on the basis of a single comment related to the defendant’s post-Miranda silence where trial court gave curative instruction and the silence was not used against the defendant).

 We note that, in light of our conclusion that no constitutional error occurred, the “harmless beyond a reasonable doubt” test used by the Court of Appeals is inapposite. Like the Eleventh Circuit in Stubbs, “[w]e do not reach the issue of harmless error because we conclude that, absent use by the prosecution of the comment on defendant’s postarrest silence, there was no Doyle violation.” Stubbs, supra at 835, n 10 (emphasis in original).

 Indeed, this analysis is consistent with Greer. The Greer Court stated that it had no reason to believe that the jury was incapable of obeying curative instructions and that, far from being “devastating,” evidence of the defendant’s postarrest silence was at most “insolubly ambiguous.” Id. at 767, n 8. As a further consideration, Detective Cooper’s testimony did not state that defendant absolutely refused to be interviewed by the police, but rather only that he wanted to speak to an attorney before being questioned. A desire to involve an attorney in a police interview or interrogation could well be understood by a juror as reflecting a concern for being treated fairly and wishing the assistance of a sophisticated advocate to respond to any unfair questioning that might seek to turn the suspect’s words against himself. A typical citizen should understand such concerns and not regard the request for an attorney before questioning as being “suspicious” in the same way that an absolute refusal to speak with the police might be taken. Accordingly, the present opinion does not address a situation in which police testimony makes clear that a defendant has absolutely refused to be interviewed by the police.

 We also note that we are puzzled at that Court’s decision to reverse defendant’s conviction of malicious destruction of police property. From the record, and even from the recitation of facts in the Court of Appeals opinion, there was undisputed evidence that defendant openly kicked out the window of a police car in the presence of police officers. Accordingly, it is evident that any possible error was harmless beyond a reasonable doubt with regard to the malicious destruction charge in light of the overwhelming evidence of guilt regarding that charge.