# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DUANE KEVIN MCGILARY,

        Defendant-Appellant.

UNPUBLISHED
April 23, 2015

No. 319975
Wayne Circuit Court
LC No. 12-001815-FC

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of assault with intent to commit murder, MCL 750.83, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, assaulting, restricting, or obstructing a police officer, MCL 750.81d(1), first-degree home invasion, MCL 750.110a(2), and carrying a concealed weapon, MCL 750.227. We affirm.

Two police officers responding to gunshots being fired at a coney island saw defendant in the area and asked him to "come here." Defendant ran away and the police officers pursued him in their vehicle. Eventually defendant stopped and pointed a gun directly at the police vehicle and began shooting as he ran toward the vehicle. Defendant then ran to a nearby house, climbed over a locked gate, and entered the house through the side door. The owner of the house asked defendant to leave and he refused. During their search for defendant, the police found a black handgun by the locked gate that defendant had climbed. Subsequently, the homeowner was able to alert the police that defendant was inside his house and defendant was arrested.

## I. SUBSTITUTION AND DENIAL OF COUNSEL

On appeal, defendant argues that the trial court failed in its duty to inquire into the reasons for his dissatisfaction with trial counsel, and further claims that he was constructively denied counsel during the pretrial investigation period. We disagree.

A court's decision regarding a request for substitution of counsel is reviewed for abuse of discretion, which occurs when the trial court's decision "falls outside the range of reasonable and principled outcomes." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (citation omitted). Defendant's ineffective assistance of counsel claim is raised for the first time

-1-

on appeal; thus, our review is for errors apparent on the record. See *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

All criminal defendants enjoy the right to the assistance of counsel under the United States and Michigan constitutions. US Const, Am VI; Const 1963, art 1, § 20. However, as this Court has previously explained, this right is not limitless, especially with regard to the substitution of counsel:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic. [*Strickland*, 293 Mich App at 397 (internal quotation marks and citations omitted).]

Before trial began in this case, defendant indicated that he wanted "to address that I'm going through this thing without my paperwork." The trial court responded by summarizing defendant's charges and potential sentences and defendant indicated that he understood them. But defendant stated that he did not want to proceed with his appointed counsel because of a lack of communication; counsel had only been to see him one time. Defense counsel confirmed that he had been to see defendant one time, probably the day after he was appointed. And then counsel proceeded to describe the facts of the case, indicated that he knew "this case frontward and backwards," and had discussed the case at length with defendant, who knew "what's going on." Defendant did not respond to, deny or dispute his counsel's assertions, and the trial began. Now, on appeal, defendant claims that the trial court should have further considered defendant's complaint about his counsel. But from the record, that complaint appeared resolved to defendant's satisfaction. Further, defendant has failed to establish that good cause existed to support the appointment of substitute counsel. That is, defendant does not claim that a legitimate difference of opinion developed with regard to a fundamental trial tactic or his defense. Accordingly, this issue is without merit. Likewise, defendant's claim that he was denied counsel during the pretrial investigation period is clearly without merit.

## II. MOTION FOR MISTRIAL

Next, defendant argues that he was entitled to a mistrial after the admission of prejudicial and inflammatory testimony about unsubstantiated criminal conduct allegedly committed by defendant. We disagree.

"A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010) (internal quotation marks and citation omitted). This Court has also held that "[a] trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). A trial court's decision on a motion for a mistrial is reviewed for an abuse of discretion. *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001).

Defendant contends that the admission of testimony from his ex-girlfriend's mother, which included that she had called the police to report that defendant had broken into her daughter's home on the day of this incident, denied him a fair trial. However, the trial court instructed the jury to disregard the entirety of the challenged testimony. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). And the trial court twice reiterated its instruction to the jury that it could not consider any evidence excluded during the course of the trial. The trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Defendant also argues that a police officer improperly testified that defendant was initially approached by police because his ex-girlfriend's mother had told police that defendant was wanted for attempted murder and breaking and entering. However, defense counsel elicited this testimony on cross-examination, failed to contemporaneously object to her testimony, and then, in subsequent cross-examination questions, counsel referred to the allegation that defendant was allegedly "wanted" for those offenses. Under these circumstances, defendant waived the right to seek review of this alleged error. See *People v McPherson*, 263 Mich App 124, 139; 687 NW2d 370 (2004).

But even if we did conclude that the trial court abused its discretion in denying defendant's motion for mistrial, reversal is not required. See *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). Considering the trial court's several instructions to the jury, as well as the overwhelming, untainted evidence of defendant's guilt, no miscarriage of justice resulted. See *id*.

## III. JUDICIAL BIAS

Defendant next argues that he was denied a fair trial because the trial court exhibited judicial bias through its questioning of a police witness at trial. We disagree.

Defendant failed to preserve this issue for appeal by raising it in the trial court; thus, our review is for plain error that affected his substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). If such error is established, reversal is only required if "the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763 (internal quotation marks and citation omitted).

"A criminal defendant is entitled to a neutral and detached magistrate." *Jackson*, 292 Mich App at 597 (internal quotation marks and citation omitted). However, the trial court possesses "wide discretion and power in matters of trial conduct." *Id*. at 598 (internal quotation marks and citations omitted). As such, a defendant asserting a claim of judicial bias must overcome a heavy presumption that the trial court acted impartially. *Id*.

Defendant argues that the trial court pierced the veil of judicial impartiality through its questioning of a police witness. "While a trial court may question witnesses to clarify testimony or elicit additional relevant information, the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial."

*People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). The veil of judicial impartiality is pierced when "the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." *People v Conley*, 270 Mich App 301, 308; 715 NW2d 377 (2006) (internal quotation marks and citations omitted). Stated differently, "[t]he test is whether the judge's questions and comments may have unjustifiably aroused suspicion in the mind of the jury concerning a witness'[s] credibility and whether partiality quite possibly could have influenced the jury to the detriment of the defendant's case." *Cheeks*, 216 Mich App at 480.

Defendant argues that a major part of his defense was showing that he was not linked to the crimes forensically. Thus, the arresting officer was asked by defense counsel on cross-examination whether defendant's hands were "bagged" for a gunshot residue test and she replied that they were not. On redirect, the prosecution asked the officer whether it was the practice of the police department to require officers to secure the hands of a person who was being arrested for firing gunshots and she answered no, not to her knowledge. She further testified that it may be a policy directive that an evidence tech might follow, but not a patrol officer. Defense counsel then asked the officer if evidence techs were on the scene when defendant was arrested, and she replied in the negative. He then asked if she had taken defendant to an evidence tech for that purpose, and she said she did not. At that point, the trial court questioned the officer as follows:

> *Q*. Since 2008 the Detroit Police Department has not conducted gunshot residue testing, isn't that true?
>
> *A*. I don't know the exact date, but it's not something that we normally do.
>
> *Q*. Since April of 2008. And the reason that they no longer conduct gunshot residue testing is because the department was criticized for improperly conducting those tests, is that true?
>
> *A*. I don't know if that's the case, sir.
>
> *Q*. They were not following protocol of the Federal Bureau of Investigation; is that right? You don't know?
>
> *A*. I specifically don't know that.
>
> *Q*. Okay. But the Michigan State Police doesn't use gunshot residue testing either, do they?
>
> *A*. I'm not aware.
>
> *Q*. You are not aware of that, okay. So it's really immaterial, isn't that true?
>
> *A*. I would say so.

It is clear that the trial court's questioning was merely an attempt to clarify the officer's testimony with regard to gunshot residue testing; it is not normally done by the police department. While some of the trial court's questions regarding gunshot residue testing may not have been necessary in light of the officer's responses, the questions did not arouse suspicion in the mind of the jury concerning the officer's credibility or demonstrate partiality that could have influenced the jury against defendant's case. See *Cheeks*, 216 Mich App at 480.

However, even if the trial court's questions were improper and constituted plain error, defendant has not shown that reversal is required. See *Carines*, 460 Mich at 763-764. Considering the two officers' clear identification of defendant as the person who shot at their vehicle, and the fact that the gun was found by the locked gate defendant had climbed, it is not likely that the trial court's questions or statements regarding the use of gunshot residue testing resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of the judicial proceeding regardless of defendant's innocence. See *id*. at 763. Moreover, the trial court provided the following jury instruction:

> It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case. However, when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide this case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

"Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Abraham*, 256 Mich App at 279. In summary, defendant has failed to establish judicial bias that entitled him to the reversal of his convictions.

## IV. JUDICIAL FACT-FINDING

Next, defendant argues for the first time on appeal that the trial court violated his Sixth and Fourteenth Amendment rights by engaging in judicial fact-finding when scoring the offense variables and imposing his sentences. We disagree.

In support of his claim, defendant relies on *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2163; 186 L Ed 2d 314 (2013). However, in *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013), this Court held that *Alleyne* was not applicable to Michigan's sentencing scheme. In *People v Lockridge*, 304 Mich App 278, 284; 849 NW2d 388 (2014), we acknowledged that *Herron* is binding precedent and concluded that *Alleyne* did not affect Michigan's sentencing scheme. Although our Supreme Court has granted leave to appeal in *Lockridge*[1], and has held the *Herron* application for leave to appeal in abeyance[2] pending its

---

[1] *People v Lockridge*, 496 Mich 852 (2014).

[2] *People v Herron*, 846 NW2d 924 (2014).

resolution of *Lockridge*, this Court remains bound by *Herron* and *Lockridge*. MCR 7.215(J)(1). Thus, we reject defendant's argument.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel because his attorney invited the police officer's inflammatory testimony regarding his ex-girlfriend's mother's claims that he was wanted for attempted murder and breaking and entering, and because his counsel failed to request or perform forensic testing. We disagree. Because defendant did not preserve this issue, our review is for errors apparent on the record. See *Heft*, 299 Mich App at 80.

The right to effective assistance of counsel during a criminal trial is guaranteed by the United States and Michigan constitutions. US Const, Am VI; Const 1963, art 1, § 20. And there is a strong presumption that defense counsel provided adequate representation. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To prove an ineffective assistance claim, the defendant must show that his counsel's performance fell below an objective standard of reasonableness, and there is a reasonable probability that such deficient performance prejudiced him, i.e., but for the errors, the result of his trial would have been different. *Heft*, 299 Mich App at 80-81.

Defendant argues that his counsel invited the police officer's inflammatory testimony regarding his ex-girlfriend's mother's claims that he was wanted for attempted murder and breaking and entering, and then failed to object to that testimony. However, it is clear from defense counsel's questioning of the officer that counsel was attempting to show that the officer had relied on false and unreliable information in the pursuit of defendant as a suspect during her investigation. That is, the information regarding a shooting at the coney island turned out to be false, as were these claims by defendant's ex-girlfriend's mother. In closing argument, counsel again attempted to demonstrate that the police had no reason to investigate defendant and had relied on false information, stating:

> They decide to investigate. Investigate what? The guy hasn't done anything and someone already had lied upon him one time before by suggesting shots were fired either inside or outside the Coney Island. The officers indicated we had no probable cause to stop the person.

"What arguments to make in closing, how to cross-examine witnesses, and what evidence to present all involve matters of trial strategy." *In re Ayres*, 239 Mich App 8, 23; 608 NW2d 132 (1999). We do not substitute our own judgment for defense counsel's judgment with respect to matters of trial strategy, or evaluate defense counsel's performance with the benefit of hindsight. *Horn*, 279 Mich App at 39. And, here, defendant has failed to demonstrate that defense counsel's elicitation of the police officer's statement or failure to object to that testimony fell below an objective standard of reasonableness. See *Heft*, 299 Mich App at 80-81.

Defendant also argues that defense counsel's failure to ask the police to perform gunpowder residue testing on defendant's clothing, fingerprint testing, and ballistics testing, or request funds to secure independent testing, constituted ineffective assistance of counsel.

-6-

"Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). But, here, defendant has failed to show that such evidence even existed that could have undergone some of the types of testing to which he refers. And defense counsel's decisions regarding which evidence to present and how to argue evidence are presumed to be matters of trial strategy. See *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

Considering the eyewitness and circumstantial evidence in this case, it is likely that defense counsel decided to use the lack of testing to defendant's advantage by systematically cross-examining the officers about the lack of testing and reiterating the lack of testing during his closing argument. Counsel clearly used the lack of testing to show that the police failed to adequately investigate this case, unfairly focused their investigation on defendant, and then improperly arrested defendant because he was not the perpetrator. The fact that a trial strategy failed does not demonstrate that defense counsel provided ineffective assistance. *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). In summary, we conclude that defendant has failed to overcome the strong presumption that he received the effective assistance of counsel. See *Vaughn*, 491 Mich at 670.

## VI. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues that that the prosecution presented insufficient evidence to support his first-degree home invasion conviction. After de novo review, considering the evidence in the light most favorable to the prosecution, we disagree. See *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000); *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

The elements of first-degree home invasion include that the defendant entered a dwelling without permission, intending to commit a felony while another person was lawfully in the dwelling. See *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). Defendant argues that the evidence was insufficient to prove that he intended to commit a felony; rather, he entered the home to make a phone call. However, the felony underlying the first-degree home invasion charge was assaulting, resisting and/or obstructing a police officer. Pursuant to MCL 750.81d(1), the elements of assaulting, resisting, or obstructing a police officer are:

> (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. [*People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010).]

The definition of "obstruct" includes "a knowing failure to comply with a lawful command." MCL 750.81d(7)(a); *Corr*, 287 Mich at 503.

Here, when defendant was being pursued by police in their vehicle, he fired several gunshots at their vehicle and then continued to run. He ran to a nearby house, climbed over a locked gate, and entered the house without permission. Defendant told the homeowner that he was running from the police and he refused to leave the house. This evidence was sufficient to

establish first-degree home invasion.  See *Corr*, 287 Mich App at 503; see also *People v Pohl*, 207 Mich App 332, 333; 523 NW2d 634 (1994) ("Although defendant did not physically obstruct the officer, he did engage in conduct that under all the circumstances hindered an officer conducting a police investigation—a police function covered by the resisting and obstructing statute.").

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Henry William Saad