# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SHAWN THOMAS MCKNIGHT,

      Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No. 321864
Calhoun Circuit Court
LC No. 2013-003882-FC

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals from his convictions following a jury trial of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The jury acquitted defendant of first-degree premeditated murder, MCL 750.316(a),[1] assault with intent to murder, MCL 750.83, and the felony-firearm charges associated with those two charges. The trial court sentenced defendant as a habitual offender, fourth offense, MCL 769.12, to serve a prison term of 76 months to 15 years for the felon in possession of a firearm conviction and to a preceding and consecutive sentence of 2 years for the felony-firearm conviction. For the reasons provided below, we affirm defendant's convictions but remand for further proceedings related to defendant's sentence.

## I. FACTS

This prosecution stems from a shooting that occurred while many people were congregating at a block party. Terrance Ware was shot and killed, and Tyreese Hesiben, who had been talking with Ware just prior to the shooting, was shot in the neck but survived. Defendant was charged with shooting both men. There was evidence of bad blood between Ware and defendant. Multiple witnesses testified to seeing defendant at the party holding a gun. But no one at the time reported seeing defendant actually fire any shots with his gun. However, two years after the shooting, a witness came forward and claimed that he saw defendant fire several rounds in the direction of Ware. This eyewitness was in jail when he came forward with

---

[1] The jury was also instructed on second-degree murder, MCL 750.317, as a lesser included offense of first-degree murder.

-1-

his evidence. He agreed that in exchange for his testimony, a pending charge of armed robbery was reduced to larceny from a person. Defendant presented witnesses that placed him somewhere else at the time of the shooting.

## II. EXTRANEOUS INFLUENCE

Defendant argues that the trial court erred when it denied his motion for a mistrial because of a purported extraneous influence on the jury. We review the court's decision on a motion for a mistrial for an abuse of discretion. *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

Following the testimony of defendant's first witness, Christopher Taylor, a juror came forward and informed the court that he knew Taylor and was afraid of him. The juror indicated that he could no longer be a fair and impartial. The court excused the juror and then interviewed four other jurors who might have learned of the dismissed juror's concerns. One explained that she did not overhear any comments. Two others admitted that they had heard about the dismissed juror's concerns, but they each asserted that it would not affect their ability to be fair and impartial. A fourth juror said that she "felt bad for" the dismissed juror because he appeared to be very worried about the situation. The fourth juror also claimed that the incident would make her think more about "the reaction of the family." She clarified that she did not intend to imply that she was only concerned for one family's reaction; instead, she meant that "either family" could be upset depending on the verdict. However, the juror ultimately asserted that the incident would not change her ability to make a fair decision, and she was satisfied that she could execute her oath as a juror despite her concerns.

Defense counsel moved for a mistrial, arguing that the dismissed juror's comments "clearly had a chilling effect on the jurors, especially" the fourth juror. Moreover, counsel argued "that in fairness to my client we should, at the very least, poll each and every" juror. The court denied the motion for mistrial and declined to interview more jurors. The court noted that the four jurors questioned stated that their objectivity was not affected by the events and concluded that there was no basis to question the remaining jurors because there was no evidence that anyone else heard the dismissed juror's statements or were likely to have been influenced by them.

"A defendant tried by jury has a right to a fair and impartial jury." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "During their deliberations, jurors may only consider the evidence that is presented to them in open court." *Id.* "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights . . . ." *Id.*

> In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences. Second, the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict. Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is

substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict. If the defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt. [*Id.* at 88-89 (citations omitted).]

There is no question that defendant established that the jury was exposed to an extraneous influence—the fear the dismissed juror felt with respect to the witness Taylor. However, defendant has not shown that there was a real and substantial possibility that the extraneous influence affected the verdict.

The fact that some jurors knew that the dismissed juror recognized and was frightened by Taylor does not relate directly to the facts of the case. While this fear did affect the dismissed juror's ability to make an impartial verdict, each other juror that heard the dismissed juror's concerns affirmed that they could still be fair and impartial. Moreover, defendant's argument that the comments negatively affected the jury's impression of Taylor is not supported by the record. The witness testified, in relevant part, that Dedrick Richardson, who was the only witness who claimed to have seen defendant fire a gun at the direction of Ware that night, was not at the block party. The fact that the jury acquitted defendant of the more serious charges related to the shooting itself, shows that Taylor's testimony was, if anything, looked upon favorably. Accordingly, we do not see how defendant established that there was "a real and substantial possibility" that any extraneous influence could have impacted the jury's verdict. *Id.* at 89.

### III. REQUEST FOR REMAND—NEWLY DISCOVERED EVIDENCE

Defendant also argues that the case should be remanded for an evidentiary hearing and for allowing him to raise a motion for a new trial on the basis that Richardson offered to recant his trial testimony. This same argument was the basis for a motion to remand defendant filed with this Court, which was denied. *People v McKnight*, unpublished order of the Court of Appeals, entered February 9, 2015 (Docket No. 321864). We note that defendant still has not submitted a signed affidavit in support of his request, despite the fact his initial motion indicated that one would be forthcoming. Accordingly, we find no reason to come to a different conclusion.

Regardless, even if a proper affidavit were submitted to this Court, a remand would not be needed. We note that the jury did not convict defendant of any offense that was based on a finding that defendant actually *discharged* his firearm. Defendant's only convictions were based on his *possession* of a firearm at the time. There were other witnesses, besides Richardson, who testified that defendant possessed a weapon on the night of the shooting. Therefore, even if Richardson recants his testimony regarding whether he actually saw defendant shoot at least one of the victims, we do not believe that it would make a difference in the jury's decision. It appears that the jury did not find Richardson credible at the time of trial and based its verdict on the other witnesses' accounts. It therefore appears that the trial court would not grant a new trial even if Richardson recants his trial testimony, see *People v Terrell*, 289 Mich App 553, 559; 797 NW2d 684 (2010) (providing that in order to grant a new trial on the basis of newly discovered

evidence, a defendant must establish, *inter alia*, that the new evidence makes a different result probable on retrial), which would make a remand an exercise in futility.

## IV.  DEFENDANT'S STANDARD 4 BRIEF

### A.  SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to convict him of felon in possession of a firearm.  When reviewing a challenge to the sufficiency of the evidence, we review "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).  "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

MCL 750.224f provides that a person convicted of a felony "shall not possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm" until certain criteria are met. Defendant does not dispute that he is a felon, only that there is insufficient evidence that he possessed a firearm.  As defendant admits, however, three witnesses testified that they saw him in possession of a firearm.  Defendant claims that these witnesses were not credible, but "[q]uestions of credibility are left to the trier of fact and will not be resolved anew by this Court." *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).  Therefore, the evidence was sufficient for a jury to conclude beyond a reasonable doubt that defendant possessed a firearm on the night of the shooting.

Additionally, defendant argues that the jury must have impermissibly compromised its verdict because it found him guilty of felon in possession of a firearm while finding him not guilty of murder or assault with intent to commit murder.  Defendant is correct that compromised verdicts are disfavored because there is a risk that some jurors did not believe that defendant was actually guilty beyond a reasonable doubt. *People v Lewis*, 415 Mich 443, 451-452; 370 NW2d 16 (1982).  However, the fact that the jury found defendant not guilty of murder and assault with intent to commit murder but guilty of felon in possession and felony-firearm does not evidence a compromised verdict because these verdicts are not inconsistent.  See *id.* at 450 (stating that the inconsistency in verdicts can suggest that a verdict was compromised).  The mere fact that defendant may have possessed a gun that night does not require finding that he was the one who shot Ware and Hesiben.  Thus, the verdicts do not suggest anything other than the prosecution simply failed to prove beyond a reasonable doubt that defendant was the one who shot Ware and Hesiben.  Moreover, it is axiomatic that "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999).

### B.  SENTENCING

Defendant next raises multiple issues related to the scoring of the offense variables (OVs).  Specifically, defendant argues that the trial court improperly engaged in fact finding during sentencing in relation to facts not found by the jury.  Defendant did not raise this issue at

the trial court. Therefore, this unpreserved issue is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

Our Supreme Court's recent decision in *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, decided July 29, 2015), addresses this issue. In *Lockridge*, the Supreme Court held that when a judge makes findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding that increases a defendant's minimum sentence, this runs afoul of a defendant's right to a jury trial. *Id.* at ___ (slip op at 1). As a result, in order to avoid any Sixth Amendment violations, the Court further held that Michigan's sentencing guidelines scheme is to be deemed advisory, not mandatory. *Id.* at ___ (slip op at 28). But sentencing judges must nonetheless consult the guidelines and "'take them into account when sentencing.'" *Id.* at___ (slip op at 28), quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

Here, the court assessed 25 points for OV 1 (aggravated use of a weapon), 100 points for OV 3 (physical injury to victim), 10 points for OV 9 (number of victims), and 15 points for OV 10 (exploitation of vulnerable victim). This total of 150 points placed defendant in OV level VI of the sentencing grid. See MCL 777.66.

It is clear that the trial court used facts beyond those admitted by defendant or found by the jury to assess points for all of the OVs. The court assessed 25 points under OV 1 because it found that defendant discharged a firearm at or toward a human being. The court assessed 100 points under OV 3 because a victim was killed. The court scored OV 9 at 10 points because it found that two to nine people were placed in danger, and 15 points were scored under OV 10 because the court found that predatory conduct was involved. Although there was testimony at trial to support the scoring of each of these OVs, defendant did not admit any facts to support these assessments, and the jury's verdict does not require finding any facts that support the assessments. Specifically, the jury's verdict does not require finding that defendant discharged a firearm, that defendant killed anyone, that two to nine people were placed in danger, and that predatory conduct was involved.[2] Therefore, defendant has established a "threshold showing of the potential for plain error." *Id.* at __ (slip op at 32-33). To be clear, the constitutional malady is the *mandatory characteristic of the guidelines*, not the fact that the trial court made findings of fact outside the scope of the jury's verdict. A court still must score the various OVs on the basis of a preponderance of the evidence standard. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013); see *Lockridge*, ___ Mich at ___ (slip op at 36).

The remedy, as outlined by our Supreme Court, is to remand for the trial court to conduct a *Crosby*[3] hearing, where the trial court is first to determine whether defendant wishes to be

---

[2] We note that while defendant's convictions established that he possessed a firearm, the convictions do not establish how many people, i.e., "victims," were present and "placed in danger of physical injury or death." See MCL 777.39. Thus, while a closer question, we nonetheless conclude that the scoring of OV 9 at 10 points was not supported by the jury verdict.

[3] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

resentenced, with the understanding that the sentencing guidelines now are advisory. *Lockridge*, ___ Mich at ___ (slip op at 35). If the answer is "yes," then the court shall determine whether it would have imposed a materially different sentence but for the unconstitutional constraint. *Id.* at ___ (slip op at 35).

We affirm defendant's convictions but remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra