*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTOINETTE CHANTELL WEBB,

        Defendant-Appellant.

UNPUBLISHED
November 27, 2024
11:47 AM

No. 369657
Wayne Circuit Court
LC No. 22-007143-01-FC

Before: K. F. KELLY, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right her jury-trial convictions of assault with a dangerous weapon ("felonious assault"), MCL 750.82; felon in possession of a firearm ("felon-in-possession"), MCL 750.224f; and two counts of possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. Defendant was sentenced as a third-offense habitual offender, MCL 769.11, to 34 to 96 months' imprisonment for the felonious assault conviction, 34 to 120 months' imprisonment for the felon-in-possession conviction, and 2 years' imprisonment for each felony-firearm conviction. Because at trial the prosecution suppressed evidence that was material and exculpatory to defendant, we vacate defendant's convictions and sentences and remand for a new trial.

## I. BASIC FACTS AND PROCEDURAL HISTORY

On September 14, 2022, the victim, Aaron Harvey, was shot by defendant while the victim was speaking with his ex-fiancée, Deaires Freeman, on defendant's porch. Earlier in the day, the victim and Freeman got into a verbal argument, which eventually escalated to Freeman throwing the victim's clothes out of the house and onto the front lawn. After the victim retrieved his clothes and left, he attempted to contact Freeman—who had also left—by telephone but Freeman did not answer. The victim them walked to defendant's house, where he knew Freeman stayed.

When the victim arrived, he spoke with Freeman on the porch. The victim stated that defendant then walked out of the house, told defendant to leave, and then shot defendant, striking him in the groin. The victim escaped and called his mother to take him to the hospital, where he was treated and discharged the next day. The victim contacted Detroit police and identified

defendant as the shooter. On November 2, 2022, defendant was arrested after police initiated a traffic stop while defendant was driving a Dodge Durango owned by a third party, Christopher Todd Denwiddle. Police recovered an unloaded handgun in the trunk of the Durango and placed it into evidence.

After a two-day trial, in which the handgun recovered from Denwiddle's vehicle was admitted into evidence, defendant was convicted and sentenced as previously noted. This appeal followed.

## II. STANDARDS OF REVIEW

"A trial court's decision on a motion for new trial is reviewed for an abuse of discretion, which occurs when the trial court renders a decision falling outside the range of principled decisions." *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). Additionally, "[a] trial court's ruling addressing a motion to dismiss is reviewed for an abuse of discretion." *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). We review constitutional claims of error de novo. *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020).

## III. ANALYSIS

Defendant argues the trial court abused its discretion by failing to declare a mistrial after the prosecution did not disclose a ballistics report in violation of *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We agree.

For the first time during trial, defendant was made aware that a Department National Integrated Ballistic Information Network Evidence Worksheet ("NIBIN report") was prepared for this case. The NIBIN report indicated the firearm recovered from Denwiddle's Dodge Durango was not linked to the shooting at defendant's home. Defendant moved for a mistrial or dismissal and argued the prosecution violated *Brady* by failing to disclose the report. The trial court denied defendant's motion and provided the jury two limiting instructions for the suppressed NIBIN report and handgun.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 US at 87. In order to establish a *Brady* violation, the defendant must show: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150. In addition, "[t]he government is held responsible for evidence within its control, even evidence unknown to the prosecution without regard to the prosecution's good or bad faith." *Id*. (citations omitted). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*.

For a defendant to establish materiality, the defendant must demonstrate "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). "The question is whether, in the absence of the suppressed evidence, the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Chenault*, 495 Mich at 150-151 (quotation marks and citation omitted).

-2-

There is no dispute that the NIBIN report was not timely disclosed to defendant. Defense counsel's motion during trial demonstrated defendant was unaware of the NIBIN report until trial. While defense counsel believed the prosecution was not in possession of the evidence, the prosecution concedes it failed to disclose the evidence. Moreover, the prosecution was able to obtain the NIBIN report in only a few minutes when asked to obtain it, demonstrating that the report was readily available. Even without the prosecution's admission, the NIBIN report was suppressed because it was not disclosed until the middle of trial. See *Burger*, 331 Mich App at 518 ("We conclude that this information was suppressed, because it was not disclosed until the beginning of trial, and that it was material to defendant's case.").

To demonstrate that evidence is exculpatory, defendant "must show that the evidence might have exonerated him or her." *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012). Defendant was charged with crimes associated with the unlawful use of a firearm. The firearm defendant was in possession of when arrested was shown to have no direct link to the shooting as determined in the NIBIN report. On appeal, defendant argues, had counsel been aware of the report, she would have moved to exclude the handgun for being more prejudicial than probative. Indeed, the prosecution admitted that "there is nothing to link this firearm that was recovered to the shooting." We agree—the NIBIN report is exculpatory evidence because it demonstrates the firearm found with defendant was not linked to the shooting for which defendant was on trial. *Id*.

The next determination is whether the NIBIN report was material. *Chenault*, 495 Mich at 150. On appeal, defendant argues had she known about the NIBIN report prior to trial, her counsel would have moved to exclude the firearm from being admitted into evidence under MRE 402 and 403. Defendant's argument has merit. MRE 402 prevents irrelevant evidence from being admitted. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." MRE 401. Because the handgun found in the Denwiddle's Durango had no direct link to the shooting, its probative value was low.

Moreover, whatever relevance the handgun would have had to the prosecution's case, introduction of the gun was overly prejudicial under MRE 403. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403.

> The weighing of evidence's probative value against its prejudicial effect requires a balancing of several factors, including the necessary time to present the evidence, whether the evidence is needlessly cumulative, how directly probative the evidence is, how necessary the fact to be proven by the evidence is, whether the evidence would mislead the jury, and whether there is an alternative and less potentially harmful way to prove the fact. [*People v Sharpe*, 502 Mich 313, 331-332; 918 NW2d 504 (2018).]

Because the handgun had no link to the shooting, admitting it into evidence had the potential to mislead the jury. Further, the prosecution already provided the victim's testimony of the events as evidence of the shooting. Thus, there was a reasonable chance the handgun would have been excluded for being more prejudicial then probative. *Id*.

Evidence is material if it had a reasonable probability to change the outcome of the proceedings. *Chenault*, 495 Mich at 150. There is a reasonable probability the NIBIN report would provide a basis for the trial court to exclude the handgun for being more prejudicial than probative. With no handgun, the prosecution would have to rely exclusively on the victim's testimony of the shooting. While this Court will not interfere with a jury's determination of credibility, see *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), the victim's testimony lacked indicia of credibility. The victim admitted he was uncertain of when events occurred, said he was taken to Beaumont Hospital when other witnesses confirmed he was taken to Detroit Receiving, and failed to disclose to law enforcement that he went to defendant's home earlier in the day.

The trial court attempted to take remedial steps when it became aware of the NIBIN report by instructing the jury about the failure to disclose the report to defendant and how the handgun found with defendant was not related to the shooting. The trial court stated:

> Alright, everybody can have a seat. Alright, there is a couple of things I want to instruct the jury on. First of all, the gun that has been marked as Exhibit Number Four is not related to this shooting, okay. Number two, Michigan law requires the prosecutor and the police to turn over any and all evidence with regard to this case, and the prosecutor and the police have failed in that, in turning over any and all evidence with regard to this case, okay.

The prosecution objected to the jury instruction and argued, while there was no direct link to the shooting, the trial court could not tell the jury the handgun was *not involved* in the shooting. The trial court subsequently changed its jury instruction. The trial court stated: "Alright. Jury, earlier I had told you that this gun is not related to the shooting. I want you to disregard that, okay. What the instruction I'm going to give you is this gun has no direct link to the shooting, okay." Although defendant objected to this modified instruction arguing the instruction could not undo the prejudice of showing the jury the handgun, the objection was overruled.

While the trial court did provide two sets of jury instructions to attempt to remedy this issue, the multiple instructions themselves were a source of error.

> [W]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant. [*People v Dennis*, 464 Mich 567, 581; 628 NW2d 502 (2001), quoting *Greer v Miller*, 483 US 756, 767 n 8; 107 S Ct 3102; 97 L Ed 2d 618 (1987).]

While the trial court did provide a limiting jury instruction with respect to the handgun, the court provided two sets of instructions. The first set of instructions told the jury the handgun was "not related to the shooting." The trial court then changed the instruction to "no direct link to the shooting." The trial court's confusing instructions therefore allowed the jury to consider evidence that the prosecution admitted was not linked to the shooting. While this Court will presume juries

follow their instructions, the jury instructions in this case allowed the jury to consider evidence that was detrimental to defendant but overall not relevant to the case. *Dennis*, 464 Mich at 581.

Defendant argues that she would have moved to suppress the handgun had she known about the NIBIN report, and defendant had a meritorious argument that any probative value of the firearm was outweighed by its prejudice. Moreover, the trial court's multiple jury instructions about the handgun being not directly linked to the shooting did not remedy the admission of the unrelated handgun and likely added more confusion. Therefore, there is a reasonable probability, had the prosecution disclosed the NIBIN report, the proceedings would have been different. *Chenault*, 495 Mich at 150. Because the prosecution suppressed the NIBIN report, the report was beneficial to defendant, the report was material to defendant's case, the prosecution failed to disclose the report in violation of *Brady*. See *Chenault*, 495 Mich at 150. Consequently, the trial court abused its discretion when it denied defendant's motion for a mistrial. *Dimambro*, 318 Mich App at 212.

Defendant's convictions and sentences are vacated and the case is remanded for a new trial.[1] We do not retain jurisdiction.


/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan

---

[1] While we recognize that defendant was convicted of being a felon-in-possession as a result of the handgun found in the Dodge Durango, the handgun was shown to the jury before the disclosure of the NIBIN report. The errors identified in this opinion impacted the trial proceedings to such a degree that we must vacate defendant's felon-in-possession conviction as well.