# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 18, 2019

Plaintiff-Appellee,

v

No. 341147
Berrien Circuit Court
LC No. 2017-015329-FH

JUAN MARTINEZ III,

Defendant-Appellant.

Before: RIORDAN, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion to accomplish sexual penetration), and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (force or coercion to accomplish sexual contact). He was sentenced to 50 months to 15 years' imprisonment for the CSC-III conviction and to 35 days' incarceration for the CSC-IV conviction. We affirm.

## I. BACKGROUND

In December 2016, while watching a movie with his girlfriend's sixteen-year-old daughter, JG, in his bedroom, defendant touched JG's breasts outside and under her clothing, held her to the bed when she attempted to leave, and digitally penetrated her.[1] Later that evening, defendant told JG not to tell her mother what had occurred. JG told her boyfriend about the assault approximately a month after it took place, communicating with him via Facebook Messenger because he resided in Alabama. JG did not specifically inform him about the digital penetration because of embarrassment. Defendant was later arrested and temporarily incarcerated for an unrelated domestic violence incident. JG learned from her sister that defendant "might be coming back to the house" upon his release from jail, which made JG visibly uncomfortable and prompted JG to tell her sister and her sister's boyfriend about the assault. JG did not share many of the details regarding the assault. JG's sister then told their mother about the assault, who in turn questioned JG about the incident. Although JG did not

---

[1] Defendant, JG, JG's mother and three siblings, and defendant's father all lived together in the family home.

-1-

wish to talk to her mother about the sexual assault, she eventually told her what happened. JG's mother became upset and called the police. Defendant testified on his own behalf; he denied that he engaged in any improper behavior or touching with JG. Defendant asserted that JG lied about the assault in an effort to prevent defendant's return to the family home. Defendant was convicted by a jury of CSC-III and CSC-IV.

## II. ANALYSIS

### A. EXCLUSION OF TESTIMONY REGARDING A PRIOR THREAT

On appeal, defendant first argues that the trial court erred in excluding testimony regarding a threat made a few years earlier by JG in connection with her father. Assuming error, we hold that the presumed error did not prejudice defendant and that a miscarriage of justice did not result as a consequence of the error.

At the preliminary examination, defense counsel elicited testimony from JG on cross-examination in which JG indicated that she had previously told her mother that she would falsely accuse her biological father of inappropriate touching were her mother to allow JG's father back into the family home. It is this testimony that defendant sought to introduce at trial, but the court ruled that it constituted inadmissible hearsay. JG explained at the preliminary examination that she made the threat because she was only fourteen, her father was abusive, and because she did not fully appreciate the "seriousness" of her accusation. On redirect examination, the prosecutor launched into the following questioning that sought to rehabilitate JG's credibility and which we find particularly important in assessing prejudice:

> *Q.* [JG], that was your father, correct?
>
> *A.* Yes, ma'am.
>
> *Q.* That [defense counsel] is referring to, correct?
>
> *A.* Yes, ma'am.
>
> *Q.* And your concern was him moving back in the house?
>
> *A.* Yes, ma'am.
>
> *Q.* And did he in fact move back in the house?
>
> *A.* He did.
>
> *Q.* Okay. And that was after you made those statements, correct?
>
> *A.* Yes, ma'am.
>
> *Q.* And did you ever actually make a statement that your father sexually assaulted you to anyone?
>
> *A.* No, Ma'am, I did not.

*Q.* Okay. So, you said you would do it, but you didn't actually do it.

*A.* No.

*Q.* And he actually did move back in.

*A.* Yes, he did.

*Q.* Okay. . . . [D]id you tell your mom that [the offenses at issue] happened?

*A.* Yes, ma'am.

*Q.* And was that because you were looking to tell your mom that this happened?

*A.* No, ma'am.

*Q.* How did it come out?

*A.* I was talking to my sister and her boyfriend.

*Q.* Okay.

*A.* And my mom had been talking about letting [defendant] back into the house.

*Q.* And which sister?

*A.* [LG].

*Q.* Okay.

*A.* And I basically was talking to them, I don't want him back in the house because he makes me feel uncomfortable.

*Q.* Okay. Did you ever tell [LG] at that point what happened?

*A.* No, I did not.

*Q.* Okay. And so, when you told [LG] that, did your mom then come and talk to you?

*A.* Yes, she immediately went and told my mom, and then I told my mom what happened after she questioned me.

*Q.* Okay. So, you didn't go looking for your mom, or ask your mom not to have him move back in.

*A.*     No, ma'am.

*Q.*     And in fact, you didn't tell her until she confronted you, right?

*A.*     Yes, ma'am.

*Q.*     Several months later? . . . .

*A.*     Yes, ma'am.

Nearly two months after the preliminary examination was conducted, the trial court held a pretrial evidentiary hearing on a number of motions. At the hearing, JG's mother testified, recounting the matter involving JG's threat in regard to her father. The testimony by JG's mother was consistent with JG's testimony at the preliminary examination with respect to JG's assertions that after talking to her mother about her father's return home, she never accused her father of improper touching, even after he moved back into the home.

The trial record reflects that JG first disclosed the sexual assault by defendant about a month after it occurred, informing her boyfriend of the incident over Facebook Messenger; this was approximately a month before JG told her sister and mother about the assault.

We review for an abuse of discretion a trial court's decision to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003). MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

MCL 769.26 was construed by our Supreme Court in *Lukity*, 460 Mich at 495, wherein the Court explained:

> Section 26 places the burden on the defendant to demonstrate that "after an examination of the entire cause, it shall affirmatively appear that the error asserted has resulted in a miscarriage of justice." We agree . . . that reversal is only required if such an error is prejudicial and that the appropriate inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence. The object of this inquiry is to determine if it affirmatively appears that the error asserted undermines the reliability of the verdict. In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error. [Citations, quotation marks, and alteration omitted.]

-4-

Defendant views the excluded evidence in a vacuum or in isolation, failing to appreciate and understand that had the evidence of JG's threat relative to her father been admitted into evidence, the trial court, undoubtedly, would have also been compelled to allow testimony by JG and her mother that in all likelihood would have been consistent with their earlier testimony quoted and discussed above.[2] This would have greatly diminished the value of the evidence defendant sought to introduce. JG never followed through on or carried out her threat regarding her father even though he moved back into the home. Indeed, when the excluded evidence is considered in context and conjunction with the testimony that likely would have been elicited by the prosecution to counter evidence of JG's threat, it may have actually enhanced her credibility. It showed that she could not bring herself to fully engage in a fabrication involving criminal sexual conduct. Moreover, JG made her claims about defendant's assault to her boyfriend before she ever spoke to her sister and learned of defendant's return home and before her mother confronted her.[3] And we should not lose sight of the fact that JG's threat was made a few years earlier and did not pertain to defendant. We conclude that defendant has failed to demonstrate that any assumed error in excluding the evidence resulted in a miscarriage of justice. The reliability of the verdict was not undermined considering the untainted evidence, nor has defendant established that it is more probable than not that a different outcome would have resulted absent the error. We conclude that the jury would still have convicted defendant of the offenses had it heard the testimony the trial court excluded, especially in light of the testimony that certainly would have been produced or elicited by the prosecution regarding all of the

---

[2] Defendant maintains that the prospective testimony at issue was admissible under MRE 608(b). "Specific instances of the conduct of a witness . . ., if probative of truthfulness or untruthfulness, [may] be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . ." MRE 608(b). We take no stance on whether MRE 608(b) supported admission of the testimony, although we question whether the threat, in and of itself, was probative of JG's truthfulness or untruthfulness, as opposed to a prior incident of actual fabrication. The Michigan Rules of Evidence generally parallel the text of the federal rules, and we may find caselaw referring to and construing the Federal Rules of Evidence helpful and even persuasive in some instances. *People v Denson*, 500 Mich 385, 405; 902 NW2d 306 (2017). In *United States v Chapman*, 765 F3d 720, 729 n 3 (CA 7, 2014), the Seventh Circuit for the United States Court of Appeals observed that "[a]lthough Rule 608(b) refers to inquiries into specific instances of conduct 'on cross-examination' once a witness's truthfulness has been challenged, counsel can inquire into specific instances of the witness's truthful conduct to rehabilitate the witness on redirect examination." We find *Chapman* persuasive and that had defendant elicited testimony regarding JG's threat, the prosecutor, in order to rehabilitate JG, could have properly elicited testimony about JG's conduct in not accusing her father of sexual abuse on his return home. Such evidence would also have been admissible under MRE 401-403.

[3] With respect to the issue of prejudice, the dissent minimizes the relevance of JG's Facebook communication to her boyfriend about the assault. Given the sequence of events, we find this evidence particularly pertinent because it undermined defendant's position that the allegations of sexual abuse were in response to learning that defendant would be returning to the family home. By undermining defendant's theory, the evidence of the Facebook messages also diminished the evidentiary value of JG's threat regarding her father, which was connected to his return home.

surrounding circumstances, and just as the prosecution had done earlier at the preliminary examination and motion hearing.[4]  Under these facts, we find that reversal is unwarranted on this issue.

## B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his attorney was ineffective at trial in three instances.  First, defendant contends that counsel was ineffective for eliciting inadmissible hearsay statements from a police officer.  Second, defendant maintains that counsel was ineffective for failing to object to the admission of JG's statements that she made to her boyfriend, which were captured in an exhibit showing the two messaging each other on Facebook.  And third, defendant claims that counsel was ineffective for failing to object to a county deputy's presence on the jury.

In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court addressed the basic principles governing a claim of ineffective assistance of counsel, stating:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . .  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment.  In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy.  Second, the defendant must show that the deficient performance prejudiced the defense.  To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness.  *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).  "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of

---

[4] Our dissenting colleague indicates that it should be the province of the jury and not this Court to decide whether to believe JG in light of all of the evidence.  The dissent is effectively asserting that we are invading the jurors' province by deciding for them whether they still would have convicted defendant if they had heard the testimony in dispute.  Any harmless-error analysis, which this Court engages in on a regular basis, necessarily involves an assessment of what a jury would have done absent the error, and the assessment entails consideration of the untainted evidence.  Pertinent here, and as conceded by the dissent, is that the assessment must also contemplate the testimony that would have been admitted along with the threat.  The dissent, however, gives little to no weight to this prospective evidence.

counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). We cannot, however, insulate the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015).

With respect to the first alleged instance of ineffective assistance, defendant argues that when counsel cross examined a county deputy sheriff, counsel elicited inadmissible hearsay statements that were damaging to defendant. Defendant's trial strategy was to demonstrate that JG was not credible. In executing that strategy, defense counsel had the deputy sheriff testify to each allegation and statement JG made and that the deputy had recorded in his police report. Counsel then used the deputy's testimony to illustrate multiple inconsistencies in JG's testimony. Defense counsel highlighted the various discrepancies in his closing argument, maintaining that JG was "changing the details" of the assault. We cannot conclude that this was an unreasonable approach in defending against the charges. The case hinged on credibility assessments, and while some of the testimony counsel elicited was consistent with JG's testimony, there were inconsistencies that counsel could and did exploit in challenging JG's credibility. Assuming that the deputy's testimony constituted inadmissible hearsay as defendant claims, we hold that trial counsel's performance did not fall below an objective standard of reasonableness. Defendant fails to overcome the strong presumption that counsel's performance reflected sound trial strategy, formed upon the exercise of reasonable professional judgment following adequate investigation. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

With respect to the second alleged instance of ineffective assistance, defendant argues that counsel should have objected to the admission of an exhibit showing JG's Facebook conversation with her boyfriend.

The prosecution moved to admit the evidence during JG's testimony, claiming that it was not hearsay under the language in MRE 801(d)(1)(B) regarding prior consistent statements. MRE 801(d)(1)(B) provides that a statement is not hearsay if "[t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive[.]" The trial court agreed that the evidence was not hearsay under MRE 801(d)(1)(B). When the prosecutor continued questioning JG, defense counsel voiced an objection to those parts of the exhibit showing the boyfriend's statements. The prosecutor responded that she was introducing the boyfriend's statements in order to give context to the conversation and JG's comments. The trial court sternly ruled that the exhibit had already been admitted and that the prosecutor could proceed.

On appeal, defendant argues that the exhibit was not admissible under the test governing the application of MRE 801(d)(1)(B); therefore, counsel was ineffective for failing to object based on the inapplicability of MRE 801(d)(1)(B). For a statement to be admissible under MRE

801(d)(1)(B), the declarant must testify at the trial and be subject to cross-examination; there must be an express or implied charge of recent fabrication or improper motive of the declarant's testimony; the statement must be a prior statement that is consistent with the declarant's challenged in-court testimony, and the consistent statement must be made prior to the time that the supposed motive to falsify arose. *People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000). A prior consistent statement that is made after the motive to fabricate arose does not fall within the ambit of MRE 801(d)(1)(B). *People v McCray*, 245 Mich App 631, 639; 630 NW2d 633 (2001); *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996).

JG testified at trial and was subject to cross-examination. Further, JG's messaged statements to her boyfriend were consistent with her in-court testimony. Additionally, there was an express charge by defendant of recent fabrication by JG. Finally, the consistent statements made to the boyfriend occurred before the purported motive to lie arose. It was defendant's theory and his testimony that JG fabricated the sexual assault upon learning that defendant would be returning to the family home. And JG told her boyfriend of the assault over Facebook Messenger about a month prior to hearing from her sister that defendant would be returning to the house. Stated otherwise, the motive to fabricate developed after JG made the prior consistent statements.[5] Accordingly, any objection to the admission of the exhibit premised on the inapplicability of MRE 801(d)(1)(B) would have been futile; therefore, counsel was not ineffective. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) (counsel is not ineffective for failing to make futile objections).

With respect to the third and final alleged instance of ineffective assistance, defendant argues that trial counsel should have objected to a county deputy being on the jury. "[A]n attorney's decision relating to the selection of jurors generally involves matters of trial strategy, which we normally decline to evaluate with the benefit of hindsight." *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001) (citations omitted). Jurors are presumed to be both competent and impartial, and the burden of establishing otherwise rests with the defendant. *Id.* A prospective juror may be challenged for cause if he or she "is biased for or against a party or attorney." MCR 2.511(D)(2). Particularly relevant here, in *People v Walker*, 162 Mich App 60, 64-65; 412 NW2d 244 (1987), this Court observed that "[t]he fact that [the] juror . . . was a police officer is not of itself sufficient to warrant an inference of bias[,] [n]or is the mere fact that he was acquainted with the prosecuting attorney and several prosecution witnesses."[6]

---

[5] Defendant argues that JG had a motive to fabricate based on her unhappiness with how defendant disciplined her, which motive arose before she informed her boyfriend of the assault. Although there was evidence that JG was unhappy with defendant's discipline, the argument posited at trial was that the motive to lie arose when JG was told that defendant would be returning to the family home. The admissibility of evidence must be judged under the circumstances existing at the time of trial. See generally MRE 103 (rulings on evidence). Defendant cannot create a different context on appeal.

[6] We do note that in *People v Hannum*, 362 Mich 660; 107 NW2d 894 (1961), our Supreme Court granted the defendant a new trial after it was discovered that a police officer, who had not

-8-

Defendant argues that it was "unlikely" that the deputy could be impartial. But the deputy represented to the trial court that while he worked the same shift as the officer investigating the case, he could be impartial and unbiased. The deputy also stated that he had no direct knowledge of the case. Defense counsel was able to hear, observe, and judge the deputy as the deputy spoke to the court. We are not in a position to question counsel's judgment in allowing the deputy to remain on the jury. Indeed, a law enforcement officer may be more attuned and receptive to testimonial inconsistencies and discrepancies causing credibility problems even if they seem minor. There is no basis in the record to find that the deputy was biased or would not be impartial. Accordingly, we cannot conclude that counsel's performance in not excusing the deputy with a peremptory challenge or objecting to his presence on the jury fell below an objective standard of reasonableness. We believe that *People v Hannum*, 362 Mich 660; 107 NW2d 894 (1961), and *Walker* are distinguishable because there is nothing in the record showing a close, long-term working relationship as existed in *Walker*, the deputy's identity as an officer was fully disclosed here contrary to the situation in *Hannum* and because defendant's argument is framed in terms of ineffective assistance of counsel. For whatever reason, defense counsel chose to leave the deputy on the jury without objection, and we are not prepared to second guess that decision based on any arguable "inference" of bias.

Defendant points to an incident that occurred during the trial in which the deputy, during a lunch break, was observed entering the prosecutor's office. The court's inquiry into the matter, however, revealed that the deputy simply went to the prosecutor's office to have a power of attorney form notarized because he was closing on a home the following day but could not be present for the closing because of his jury-duty obligation. The deputy merely spoke to a couple of secretaries and no one else. This event does not alter our ruling; it does not establish any bias or prejudice on the deputy's part against defendant.

In sum, we reject defendant's claims of ineffective assistance of counsel.

## C. MISTRIAL

Defendant next argues that the trial court erred when it denied his motion for a mistrial based on alleged improper expert testimony and that the court also erred in failing to sua sponte declare a mistrial predicated on the deputy-juror's visit to the prosecutor's office.

---

said anything in his juror questionnaire or during voir dire about being an officer, sat on the jury. The Court observed, "Would any experienced trial lawyer, or, for that matter, the public generally, feel differently as to the capacity of a local police officer to sit as a juror and consider impartially the case of a defendant charged with a crime committed in the community? We think not." *Id.* at 666. The *Walker* panel, citing *Hannum*, was "persuaded that the same inferences of bias may be drawn in [its] . . . case." *Walker*, 162 Mich App at 66. But the Court did so because the officer-juror "worked closely with the prosecutor and certain police witnesses over a course of ten years." *Id.* at 65. In *Walker*, defense counsel had attempted to dismiss the officer-juror using a challenge for cause, but the trial court rejected it because the officer indicated that he could be impartial. *Id.* at 62-63.

Defendant unsuccessfully moved for a mistrial based on the testimony of a specialist in forensic examinations who interviewed JG. Accordingly, the mistrial issue was preserved with respect to the expert's testimony. Defendant, however, did not move for a mistrial on the basis of the deputy's going to the prosecutor's office. Therefore, the mistrial issue was unpreserved in regard to the deputy's conduct.

We review for an abuse of discretion a trial court's decision to deny a motion for a mistrial. *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). "An abuse of discretion occurs when the trial court renders a decision that falls outside the range of principled decisions." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). Unpreserved claims of error are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

A trial court "should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (quotation marks and citations omitted).

On the second day of trial, the prosecutor asked the expert, "So are there things that you did in that interview [with JG] to try to make sure that [JG] knew she could tell you the truth?" The expert answered the question, but she then added that "there was nothing that [JG] said or did that made me believe that that wasn't happening." Defense counsel quickly objected, requesting that the last part of the expert's answer be stricken from the record because it improperly vouched for JG's credibility. The trial court sustained the objection and struck the offending portion of the expert's response. Defendant also moved for a mistrial on the matter, but the trial court denied the request.

We conclude that the expert's testimony that JG was credible during her interview constituted an unresponsive, volunteered answer to a proper question. The prosecutor did not seek to elicit a credibility assessment from the expert. Rather, the prosecutor essentially asked the expert how she explained to JG the importance of telling the truth during the forensic examination.[7] The expert went beyond the scope of the prosecutor's question by commenting on JG's credibility.

In *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995), this Court stated that "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." This Court has also observed that unresponsive answers from witnesses generally do not justify a mistrial. *People v Jackson*, 313 Mich App 409, 427; 884 NW2d 297 (2015). Unless, however, the prosecutor knew in advance that the witness would provide unresponsive testimony or the prosecutor encouraged or conspired with the witness to give unresponsive testimony. *Id.* There is nothing in the record suggesting that the prosecutor had advance notice

---

[7] The prosecutor's question was inartfully phrased, and more care should be taken in any future prosecutions. We, however, do not view the question as asking the expert to opine on JG's credibility.

that the expert would give an unresponsive answer to the question or that the prosecutor and expert engaged in any conspiracy to submit unresponsive testimony.

In light of the fact that the trial court struck the challenged testimony[8] and that it was very brief in nature, thereby removing any prejudicial taint, we cannot conclude that the "irregularity" prejudiced defendant's rights and impaired his ability to receive a fair trial.

Next, the trial court did not err when it failed to sua sponte declare a mistrial based on the deputy-juror's actions in going to the prosecutor's office during trial to have a power of attorney notarized. We discussed this issue earlier, and it simply did not warrant a mistrial. There is nothing in the record suggesting that the deputy's conduct was anything but innocent or that his presence on the jury unfairly prejudiced defendant.

Finally, defendant argues that the cumulative effect of the alleged errors at trial is overwhelming, requiring us to grant him a new trial. We disagree. "The cumulative effect of several minor errors may warrant reversal where the individual errors would not." *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003). But "only actual errors are aggregated to determine their cumulative effect." *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995).

The assumed error in excluding testimony regarding JG's prior threat against her father was plainly not prejudicial when viewed in context, and the only other "error" was the expert's unresponsive, volunteered, and brief credibility assessment. Together, these errors simply do not warrant reversal.

We affirm.

/s/ Jane E. Markey
/s/ Anica Letica

---

[8] "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).